Budd Company, Appellee, *v.*
Mercer et al., Appellants.

(No. WD-83-78—Decided
February 10, 1984.)

*Mr. Robert F. Weaver, Jr.,* for appellee.

*Mr. Gerald B. Lackey, Ms. Joan Torzewski* and *Mr. Thomas E. Willging,* for appellant.

Douglas, J. This is an appeal from the judgments of the Wood County Common Pleas Court entered in the above numbered cases and consolidated for purposes of this appeal.[1]

Gladys V. Mercer and the other twenty appellants are employees of appellee, the Budd Company. Appellants are members of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) and its Local 1889 (hereinafter referred to as "the union"). The union and appellee are parties to a collective bargaining agreement (agreement) which was in effect at all times relevant to the instant appeal. The agreement contains the following pertinent and applicable provisions:

"Section 1. Employees in the continuous employ of the Company for one

---

[1] There exist twenty-one separate cases and files in the record of this appeal. The named appellants' case, *The Budd Company v. Gladys V. Mercer,* was selected in the trial court as a representative case, the resolution of which would be applicable to all appellants.

(1) year or more as of the date of hire of any one year shall be eligible to receive two per cent (2%) of their gross earnings as defined below as vacation pay. Vacation time for this increment is one (1) week.

"Section 2. Employees in the continuous employ of the Company for two (2) years or more as of the date of hire of any one year shall be eligible to receive three per cent (3%) of their gross earnings as defined below as vacation pay. Vacation time for this increment is one (1) week and three (3) days.

"Section 3. Employees in the continuous employ of the Company for three (3) years or more as of the date of hire of any one year shall be eligible to receive four per cent (4%) of their gross earnings as defined below as vacation pay. Vacation time for this increment is two (2) weeks.

"Section 4. Employees in the continuous employ of the Company for six (6) years or more as of the date of hire of any one year shall be eligible to receive five per cent (5%) of their gross earnings as defined below as vacation pay. Vacation time for this increment is two (2) weeks.

"Section 5. Employees in the continuous employ of the Company for eight (8) years or more as of the date of hire of any one year shall be eligible to receive six per cent (6%) of their gross earnings as defined below as vacation pay. Vacation time for this increment is two (2) weeks and three (3) days.

"Section 6. The vacation period shall be from January 1st through December 31st of any given year. However, vacation time off shall be allocated to Employees on the basis of seniority and the Management's production requirements.

"Section 7. Each year the Management may, if it notifies the Union not later than thirty (30) calendar days in advance of its intent to do so, schedule a vacation shutdown of either one (1) or two (2) weeks during the months of June, July, or August. Employees entitled to more vacation than the shutdown period will take their additional entitlement as scheduled by the Management with preference in scheduling such additional vacation being given to employees with the greatest seniority.

"Section 8. Vacation payment shall be made to eligible employees at the time of the employee's vacation. To receive his vacation payment, a request, in writing, must be submitted by the employee to the Management at least two (2) full calendar weeks before the vacation commences. An employee will receive all of his eligible vacation payment when he requests it. This means that an eligible employee will receive only one vacation payment per year.

"Section 9. An employee with less than two (2) weeks of vacation eligibility shall be able to schedule the number of days per vacation period and the day of commencement subject to Management approval in not more than two (2) separate periods per year. An employee with more than two (2) weeks vacation eligibility shall be able to schedule the number of days per vacation period and the day of commencement subject to Management approval in not more than three (3) separate periods per year.

"Section 10. If a holiday falls during an employee's scheduled vacation period, he may receive an additional day of vacation provided that he had indicated that such was his preference at the time his vacation was scheduled.

"Section 11. Employees eligible for more than five (5) days vacation may take up to five (5) days vacation per year, one day at a time provided that the vacation request is made twenty-four (24) hours in advance of the day re-

quested and must be approved by the employee's Supervisor and the Employee Relations Department prior to the vacation day. All one day vacation requests will be honored on a first come-first served basis.

"Section 12. Any employee who leaves the employ of the Company will receive all unpaid vacation monies due him.

"Section 13. Gross earnings are defined as the amount of earnings indicated on an employee's W-2 statement for the year immediately preceding the current vacation year."

Pursuant to Section 7, Article XX of the agreement, appellee properly notified the union that appellee would have a "vacation shutdown" from July 12, 1982 through July 16, 1982. Although a limited number of employees worked during the shutdown period, none of the appellants worked during this time.

Each appellant had been in the continuous employ of appellee for a time period of at least one year. Accordingly, each appellant was eligible to receive a certain respective percentage of his or her gross earnings[2] as "vacation pay." The payment of an employee's vacation pay, pursuant to Section 8, Article XX of the agreement is to be made to eligible employees at the time of the employee's vacation. Section 8 of the agreement also provides that when an employee submits a proper request for vacation pay to appellee, said employee would receive "all of his eligible vacation payment when he [the employee] requests it." Further, Section 8 of the agreement concludes by stating that an eligible employee "will receive only one vacation payment per year."[3]

Pursuant to the terms of the agreement, each appellant was eligible for a vacation payment of some amount. The record indicates that each appellant properly requested his or her vacation payment according to the terms of the agreement. The record also indicates that appellee made these payments to appellants at various times between the one-year period from August 7, 1981, (the earliest) to August 6, 1982 (the latest).[4] None of the appellants received any pay, vacation or otherwise, from appellee during the week of the shutdown, July 12, 1982 through July 16, 1982.

Although some appellants received their vacation payment as early as August 1981, appellee allocated, ostensibly pursuant to R.C. 4141.31(A)(5), appellants' vacation payment to the shutdown period. Notice of appellee's allocation, however, occurred, at the earliest, on September 7, 1982, and at the latest, on October 27, 1982. The earliest notice of allocation of vacation pay received by any appellant was nearly two months after the "vacation shutdown" and almost six months after appellee notified appellants of the shutdown.[5]

Appellants filed or reactivated previously filed applications for unemployment compensation benefits for the week of the shutdown with the Ohio

---

[2] Section 13 of the agreement defines gross earnings as "the amount of earnings indicated on an employee's W-2 statement for the year immediately preceding the current vacation year."

[3] The provision appears to serve appellee's interest, as Gary Keel, employee relations supervisor for appellee, testified that an annual lump sum vacation payment is the only manner in which the computer is able to process such a payment.

[4] The record indicates that Carol Montague received her vacation pay on August 6, 1982. All other appellants had received their vacation pay prior to July 12, 1982, the first day of the shutdown.

[5] The table on the following page, provided by appellants, illustrates the relevant dates of hire, dates of vacation payment, and dates of notification that appellee was allocating the vacation payments to the shutdown period.

Bureau of Employment Services (OBES). Appellee responded to these applications by contending that appellants' vacation pay had been allocated to the shutdown period. On this basis, the administrator denied benefits to appellants, finding that appellants had received deductible income (the allocated vacation payments) which exceeded the amount of unemployment compensation benefits to which appellants would otherwise have been eligible. Upon reconsideration, the administrator reaffirmed the denial of benefits to appellants. Appellants then appealed to the Unemployment Compensation Board of Review (board). The referee conducted hearings regarding appellants' claims and subsequently modified the administrator's decisions. This modification in the case of appellant Mercer, stated:

"Claimant was separated by The Budd Company due to a lack of work.

Since the claimant did not receive vacation pay for the week ending July 17, 1982, the claim for said week is hereby allowed."[6]

Appellee's further appeals of the referee's decision at the board level were disallowed. Appellee then filed its appeal in the Wood County Common Pleas Court. The common pleas court, in a memorandum decision and judgment entry filed September 30, 1983, reversed and vacated the decision of the board and remanded the cases to the board for further proceedings according to law. In so doing, the common pleas court held that: (1) the board's order affirming the referee's decision is not supported by reliable, probative or substantial evidence and is not in accordance with Ohio law; and (2) the board's order is unlawful and in contradiction of R.C. 4141.31. It is that judgment from which appellants have appealed to this court, stating as their assignments of error:

| Name | Date of Hire | Date of Vacation Payment | Date of Letter of Allocation |
|------|--------------|--------------------------|------------------------------|
| Judith A. Bishop | Feb. 5, 1979 | Feb. 22, 1982 | 9/7/82 |
| Alan Boyer | May 18, 1977 | May 21, 1982 | 9/20/82 |
| Marsha Crawford | April 6, 1981 | June 18, 1982 | 9/20/82 |
| Judy Emmitt | August 27, 1973 | Aug. 28, 1981 | 9/20/82 |
| Bonnie Fortney | Sept. 16, 1973 | Sept. 18, 1981 | 9/20/82 |
| Robt. Lee Hunt | Jan. 8, 1976 | Jan. 15, 1982 | 9/20/82 |
| Sally Kerr | Mar. 26, 1974 | Apr. 16, 1982 | 9/20/82 |
| Gladys Mercer | Aug. 7, 1973 | Aug. 7, 1981 | 9/20/82 |
| Patricia Sherman | June 29, 1976 | Jul. 2, 1982 | 10/5/82 |
| Phoebe Routson | Jan. 30, 1979 | Mar. 26, 1982 | 10/6/82 |
| Sandra Martin | Apr. 29, 1975 | May 7, 1982 | 9/28/82 |
| John Meeker | May 10, 1976 | May 14, 1982 | 9/28/82 |
| Terrie Kingery | Aug. 21, 1978 | Aug. 28, 1981 | 10/5/82 |
| Susan Kerlin | Oct. 2, 1974 | Oct. 2, 1981 | 10/5/82 |
| Maria Miranda | Sept. 28, 1977 | Oct. 2, 1981 | 10/5/82 |
| Carol Montague | June 10, 1974 | Aug. 6, 1982 | 10/13/82 |
| Eileen Bassinger | Sept. 5, 1982 | June 18, 1982 | 10/13/82 |
| Shirley Pierce | Aug. 7, 1973 | Aug. 7, 1981 | 10/13/82 |
| Mary Baird | July 29, 1974 | Aug. 7, 1981 | 10/18/82 |
| Nancy Dick | Feb. 12, 1975 | Feb. 12, 1982 | 10/20/82 |
| Dona Krebs | Feb. 7, 1974 | Feb. 12, 1982 | 10/27/82 |

[6] Similar decisions by the referee also were made in each of the other appellants' cases.

"A. The trial court erred in reversing the decision of the referee of the Ohio Bureau of Employment Services and holding that appellants were not eligible for unemployment insurance during an enforced vacation without pay caused by a lack of business.

"B. The trial court erred in reversing the decision of the referee of the Ohio Bureau of Employment Services and holding (1) that an annual payment to employees could properly be allocated to the period of an enforced plant shutdown regardless of when the payment was actually made, and (2) that there is no limitation on the right of an employer to allocate vacation pay pursuant to O.R.C. § 4141.31(A)(5).

"C. The trial court erred in reversing the decision of the referee of the Ohio Bureau of Employment Services and holding that an annual payment computed as a percentage of prior wages is 'remuneration' and 'vacation pay' within the meaning of O.R.C. § 4141.31(A)(5) and not a bonus."

Appellants' assignments of error are interrelated and, therefore, will be discussed together.

Appellee's position in the instant appeal is at least somewhat dubious, if not precarious, definitely inconsistent and closely approaching the unexplainable. Appellee asserts that the vacation payments made to appellants were allocatable to the period of the shutdown, while agreeing that during the shutdown period, appellants were "totally unemployed." "An individual is 'totally unemployed' in any week during which he performs no services *and with respect to such week no remuneration is payable to him.*" R.C. 4141.01(M). (Emphasis added.) Unemployment compensation benefits otherwise payable shall be reduced by the amount of remuneration a person receives with respect to a particular week. R.C. 4141.31(A). Vacation pay, which is payable under the terms of a labor-management contract or agree-

ment and allocated to designated weeks, is a specific form of remuneration which may be used to reduce the amount of unemployment compensation benefits for a given week. R.C. 4141.31(A)(5). Thus, for appellee to take the position that appellants' vacation pay is, as a form of remuneration, allocatable to the shutdown period, and at the same time, agree that during the shutdown period, appellants were "totally unemployed" which, by definition, means appellants received no remuneration for the shutdown period, is unquestionably contradictory and bordering on the nonsensical.

It must also be remembered that the appeal in the common pleas court was an appeal from an administrative agency and, as such, was governed by R.C. Chapter 2506. See *Schoell* v. *Sheboy* (1973), 34 Ohio App. 2d 168, 171-172. Specifically, the common pleas court is confined to the transcript compiled during the agency's proceedings (R.C. 2506.03, 2506.02), unless one of the conditions specified in the statute appears on the face of the transcript or by affidavit. R.C. 2506.03(A) and (B). See *Dvorak* v. *Municipal Civil Service Comm.* (1976), 46 Ohio St. 2d 99 [75 O.O.2d 165]; *Grant* v. *Washington Twp.* (1963), 1 Ohio App. 2d 84, 86 [30 O.O.2d 326]. When reviewing the decision of an administrative agency, the common pleas court, based on the entire record, may find that the agency's order, adjudication or decision is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence * * *." R.C. 2506.04. In undertaking this hybrid form of review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 111 [17 O.O.3d 65], and the court may not, especially in areas of ad-

ministrative expertise, blatantly substitute its judgment for that of the agency. *Dudukovich* v. *Housing Auth.* (1979), 58 Ohio St. 2d 202, 207 [12 O.O.3d 198].

Having briefly reviewed these basic principles concerning review of an administrative agency's decision, we now turn to the judgment entry of the trial court. The lower court's judgment states in two-fold part that: (1) the board's decision is not supported by reliable, probative, or substantial evidence and is not in accordance with Ohio law, and (2) the board's decision is unlawful and in contradiction of R.C. 4141.31.

The key term in R.C. 2506.04 is "preponderance." *Dudukovich, supra,* at 207. "If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision." *Id.* In determining whether the common pleas court properly applied the standard of review set forth in R.C. 2506.04, this court has a limited function. This court's determination is limited to the question of whether, as a matter of law, a preponderance of reliable, probative and substantial evidence exists to support the decision of the board. See *Dudukovich, supra,* at 208. Accordingly, upon our review of the record in each appellant's case, it is our determination that, as a matter of law, a preponderance of reliable, probative and substantial evidence exists in the transcript of the board's proceedings. The common pleas court, therefore, should have affirmed the decision of the board. On this basis alone, the judgment of the common pleas court must be reversed.

The trial court also held that the board's decision was "unlawful and in contradiction of Ohio Revised Code § 4141.31." Thus, we proceed with our analysis of this holding of the common pleas court. Appellants urge this court to determine that although the

payments due appellants were labelled "vacation pay," in actuality these payments are a "bonus" for the previous year's work. In this regard, we are persuaded by the reasoning of the Supreme Court of our sister state of Michigan in the case of *Renown Stove Co.* v. *Mich. Unemployment Comp. Comm.* (1950), 328 Mich. 436, 44 N.W. 2d 1, and followed by that court in *Rich Mfg. Corp.* v. *Lindsey* (1965), 376 Mich. 241, 137 N.W. 2d 141. In each of these cases, there existed a collective bargaining agreement similar to the one in the case *sub judice*. The Michigan Supreme Court, in interpreting these agreements, held:

"It will be noted that under the contract the employer did not have the option of laying employees off for 1 or 2 weeks, declaring the layoff to be a vacation and designating the 40 or 80 hours' pay in lieu of vacation provided for in the contract, to be, in fact, vacation pay; on the contrary, the option rested with the employees to elect whether they would take vacation with pay or a bonus of 40 or 80 hours' pay in lieu of vacation with pay. The employees covered by this contract exercised their option and elected to receive a bonus * * * as they had a right to do under the contract. The payment so received was, therefore, a bonus and not vacation pay and, in consequence, the employees involved did not receive a vacation with pay." *Rich, supra,* at 245, 137 N.W.2d at 142; *Renown Stove, supra,* at 443, 44 N.W.2d at 4.

See, also, in this regard, *Kariszeki* v. *Todd Shipyards Corp.* (1958), 6 A.D.2d 945, 175 N.Y.Supp. 2d 712, 713.

In the present case, as in *Rich* and *Renown Stove, supra,* appellants-employees had the right to select their period of vacation or to receive a payment in lieu of vacation. In the present case, as in *Rich* and *Renown Stove, supra,* the collective bargaining agreement provides for payments if em-

ployees chose not to take a vacation, thus entitling employees-appellants to "vacation payments" even though they had performed services during and received remuneration for every week in the year. Thus, the facts of the instant appeal, as did the facts in *Rich* and *Renown Stove, supra,* require that the otherwise labeled "vacation payments" be deemed what they actually are, bonuses.

Although bonuses are considered remuneration (R.C. 4141.01[H][1]), R.C. 4141.31(A)[7] is silent as to whether bonuses are a specific form of remuneration which shall reduce the amount of

unemployment compensation benefits otherwise payable. This statute (R.C. 4141.31[A]) contains five specific forms of remuneration which reduce the amount of benefits payable for any week. They are: (1) remuneration in lieu of notice, (2) partial disability payments, (3) retirement or pension allowances, (4) separation or termination pay, and (5) vacation pay or allowance. Thus, applying the statutory construction principle of *expressio unius est exclusio alterius*,[8] bonuses, although remuneration, are non-allocatable to any specific week. See *Franceschi Unemployment Comp. Case* (1961), 196 Pa. Super 150, 154, 173 A. 2d 774, 776.

---

[7] R.C. 4141.31 relevantly states:

"(A) Benefits otherwise payable for any week shall be reduced by the amount of remuneration a claimant receives with respect to such week as follows:

"(1) Remuneration in lieu of notice;

"(2) Compensation for temporary partial disability under the workers' compensation law of any state or under similar law of the United States;

"(3) Except as provided in section 4141.312 of the Revised Code, payments in the form of retirement, or pension allowances under a plan wholly financed by an employer which payments are paid either directly by the employer, or indirectly through a trust, annuity, insurance fund, or under an insurance contract whether payable upon retirement, termination, or separation from employment; provided that if the claimant has twenty-six weeks or more of employment with a subsequent employer or employers who are not paying him a pension or retirement allowance, then such pension or retirement payments shall not reduce the benefits payable for the week, and provided further that no benefits shall thereafter be charged to the account of the employer who is paying the pension, but instead such benefits shall be charged to the mutualized account except as provided in division (B)(1)(b) of section 4141.241 of the Revised Code if the claimant's separation from the employer was disqualifying under division (D)(2)(a) of section 4141.29 of the Revised Code.[;]

"(4) Remuneration in the form of separation or termination pay paid to an employee at the time of his separation from employment;

"(5) Vacation pay or allowance payable under the terms of a labor-management contract or agreement, or other contract of hire, which payments are allocated to designated weeks.

"If payments under this division are paid with respect to a month then the amount of remuneration deemed to be received with respect to any week during such month shall be computed by multiplying such monthly amount by twelve and dividing the product by fifty-two. If there is no designation of the period with respect to which payments to an individual are made under this section then an amount equal to such individual's normal weekly wage shall be attributed to and deemed paid with respect to the first and each succeeding week following his separation or termination from the employment of the employer making the payment until such amount so paid is exhausted. * * *"

[8] This rule of construction "means the mention of one thing implies the exclusion of another," *Green, Inc.* v. *Smith* (1974), 40 Ohio App. 2d 30, 32 [69 O.O.2d 17], and although not a rule of law, is used as a rule of construction to cut through ambiguities. *State, ex rel. Jackman,* v. *Court* (1967), 9 Ohio St. 2d 159, 164 [38 O.O.2d 404].

Next, we are faced with the question of whether the trial court erred in holding that: (1) an annual payment to employees could properly be allocated to the period of an enforced plant shutdown regardless of when the payment was actually made, and (2) no limitation exists on the right of an employer to allocate vacation pay pursuant to R.C. 4141.31(A)(5). These issues, which are raised in appellants' second assignment of error, are necessarily moot, as we have determined, *supra,* that the so-called "vacation payments" are, in actuality, bonuses and, as such, non-allocatable. However, we note several cases which indicate that these holdings of the trial court should not prevail.

First, we note the case of *Dudley* v. *Morris* (1967), 10 Ohio St. 2d 235 [39 O.O.2d 370]. Although the dispute in *Morris, supra,* arose out of a distinguishable factual context, we find the court's conclusion in that case most persuasive, wherein the court stated:

"[W]e hold that where an employer pursuant to a labor-management contract allocates the vacations of his employees, a claimant who finds himself on an enforced vacation without pay is involuntarily and totally unemployed for the duration of such 'vacation' and shall receive benefits provided in the Unemployment Compensation Act, Sections 4141.01 to 4141.46, inclusive, of the Revised Code." *Id.* at 239.

Further, we find the analysis utilized by the Arkansas Supreme Court in *Thornbrough* v. *Schlenker* (1958), 228 Ark. 1012, 311 S.W. 2d 753, most helpful. That court, in *Thornbrough, supra,* at 1015, 311 S.W.2d at 755, set forth the following test for determining when, in factual contexts such as the one at issue, unemployment compensation benefits should be awarded:

"[I]f, by the contract between the Union (the agent of the workers) and the management of the plant, there was reserved by the management of the plant the right to fix, at its own option, a plant wide vacation period, then the employees had agreed to such vacation and had been *'voluntarily* unemployed'; and, therefore, not entitled to employment benefits. But if the contract had no provision whereby the management reserved the right to fix, at its own option, a plant wide vacation shutdown, then the employees had not agreed to such vacation period and were *'involuntarily* unemployed' during such shutdown period; and, being *involuntarily* unemployed, they were entitled to unemployment compensation."

The rationale for such a rule proceeds first upon the basis that if an individual employee has asked for a vacation or for time off and such a request has been granted, that employee is not voluntarily unemployed. "His unemployment results from his own volition in making the request." *Combustion Engineering, Inc.* v. *O'Connor* (Mo. App. 1965), 395 S.W. 2d 528, 531. A similar situation can be said to arise where a collective bargaining agreement contains a provision requiring a plant-wide vacation during a specific period, where the employees, as members of a union, are deemed to have requested the vacation period by the action of their bargaining agent and their subsequent approval of the agreement. *O'Connor, supra,* at 531; see *Bedwell* v. *Review Bd. of Indiana Employment Security Div.* (1949), 119 Ind. App. 607, 609, 88 N.E. 2d 916, 917.

Thus, it becomes imperative to look to the terms of the agreement in the instant case. First, Section 6, Article XX of the agreement states that the "vacation period shall be from January 1st through December 31st of any given year." Although Section 7, Article XX provides appellee with the right to schedule a "vacation shutdown" of one or two weeks during the months of June, July or August, Section 8 of Article XX states that "vacation payment shall be

made to eligible employees at the time of the employee's vacation," and continues by stating that "[a]n employee will receive all of his eligible vacation payment when he requests it."

The actions of appellants in the present case did not result in their unemployment. The actions taken by appellants, *i.e.*, requesting their "vacation payment," are actions which they had every right to take under the collective bargaining agreement. To adopt appellee's position would be rewriting the collective bargaining agreement to require appellants to request "vacation payments" only during periods of a "vacation shutdown." This is clearly not contemplated by the present agreement. Cf. *O'Connor, supra*, at 532. Further, the "vacation payments" which appellants herein actually received were not related to an ascertainable week during which appellants lost wages. The "vacation payments," pursuant to the agreement, were paid upon an employee-appellant's request. Cf. *Conon v. Adm., Unemployment Comp. Act* (1955), 142 Conn. 236, 245-246, 113 A. 2d 354, 359-360; see *Ungarean Unemployment Comp. Case* (1966), 207 Pa. Super. 506, 512, 218 A. 2d 847, 850. ("If it is improper to allocate vacation pay to non-vacation time it is equally improper to allocate vacation pay to the general shutdown period, which, for these claimants [appellants, herein] was a non-vacation period, so found by the fact finders.") See, generally, Annotation, Unemployment Compensation as Affected by Vacation or Payment in Lieu Thereof (1982), 14 A.L.R. 4th 1175, 1181-1192. But, see, *Goodyear Tire & Rubber Co.* v. *Employment Security Bd. of Rev.* (1970), 205 Kan. 279, 469 P. 2d 263; *Mills* v. *Gronning* (Utah 1978), 581 P. 2d 1334.

The unfairness which stems from the common pleas court's decision can best be illustrated in the following situation.

An employee who was permitted to take vacation and receive "vacation payment" prior to the "vacation shutdown" would be entitled to unemployment compensation benefits during the shutdown period. Thus, an employee who took an early vacation would receive both vacation pay and unemployment compensation benefits while working fewer weeks than appellants herein. Cf. *Frederick Unemployment Comp. Case* (1968), 212 Pa. Super. 112, 119, 239 A. 2d 874, 877 (dissent). To permit the common pleas court decision to stand would be tantamount to this court placing its imprimatur on the patent unfairness illustrated above.

Based on all the foregoing reasons, appellants' assignments of error are found well-taken and the judgments of the Wood County Common Pleas Court are reversed and vacated. The decisions of the board of review are reinstated and affirmed. The cause is remanded to the Wood County Common Pleas Court for execution of judgments rendered herein.

*Judgment reversed.*

CONNORS, P.J., and RESNICK, J., concur.