**TEMPO HOLDING COMPANY, Appellee,**

v.

**OXFORD CITY COUNCIL, Appellant.**

[Cite as *Tempo Holding Co.* v. *Oxford City Council* (1992), 78 Ohio App.3d 1.]

Court of Appeals of Ohio,
Butler County.

No. CA91–08–135.

Decided April 20, 1992.

*Jack F. Grove, Rathman, Combs, Schaefer & Kaup* and *Gene E. Schaefer,* for appellee.

*McHugh & McHugh, Stephen M. McHugh, Beckman, Weil, Shepardson & Faller* and *Richard M. Hopple,* for appellant.

WALSH, Judge.

Defendant-appellant, Oxford City Council ("council"), appeals a decision of the Butler County Court of Common Pleas, reversing council's denial of an additional use permit sought by plaintiff-appellee, Tempo Holding Company ("Tempo").

The record indicates that on May 13, 1988, Tempo filed an application for an additional use permit with council.[1] Tempo sought to use its property located on West Church Street in Oxford for residential purposes. Though the property was zoned C–3, an Urban Business Commercial District, the Oxford Zoning Code provided that residences are permitted as an additional use, subject to certain enumerated standards. At some point in the proceedings before council, Tempo specified that it sought to use its property for a fraternity or sorority house.

On July 12, 1988, a hearing was held before the Oxford Planning Commission. As a result of that hearing, the planning commission recommended against the issuance of the additional use permit. Then, on September 6, 1988, council considered the application in a public meeting. It voted to accept the planning commission's recommendation to deny the application.

Tempo appealed council's decision to the Butler County Court of Common Pleas. That appeal was dismissed on the basis that Tempo had failed to exhaust its administrative remedies. Meanwhile, during the pendency of the appeal, the Oxford Zoning Code was amended to specifically prohibit fraternity and sorority houses in the C–3 district.

Following the dismissal of Tempo's first appeal, the application was again placed on council's agenda, and a public hearing was held on July 3, 1990. The evidence indicated that the Tempo property is a large, three-story house of approximately 4,400 square feet. It is situated on a street in which various uses are present. Tempo submitted a series of photographs depicting several residential structures, including multiple-unit student housing, within two blocks of the property in question. The evidence indicated that there were fraternity and sorority houses within two blocks of the Tempo property, but within the R–4 residential district, which specifically permits such housing. The evidence also established that diagonally across the street from the Tempo property is the Smith & Ogle Funeral Home.

At the hearing, Tempo offered the testimony of Lloyd Towers, an architect and retired building and zoning administrator, concerning the propriety of a

---

1. The parties agree that the term "additional use" as used in the Oxford Zoning Code is functionally equivalent to the commonly used term "conditional use."

fraternity or sorority house on the Tempo property. Towers had conducted a study of the Tempo property and of the vicinity to determine the viable uses of the property. He expressed the opinion that a fraternity or sorority use would be proper, as it would be compatible with the uses in the immediately surrounding area and would be consistent with the other residential uses in the vicinity. Towers emphasized that the property's proximity to the R–4 district would make the proposed use appropriate. He further stressed the need for student housing and the house's inappropriateness for commercial uses. Two of Tempo's partners, Phil Morrical and Courtney Combs, testified that, based on their experience in the real estate business and their knowledge of the community, they had determined that the proposed use was appropriate.

Stuart Meck, Oxford's Planning Director, also testified at the hearing. Meck stated that a fraternity or sorority house would constitute a "residential use" within the meaning of the zoning code's additional use provisions, but explained that the number of occupants in the house would be limited by the available parking spaces on the property. In a staff report to council, Meck had stated that a fraternity or sorority house would be appropriate if occupancy were limited to twenty-two occupants.

Several witnesses at the hearing expressed opposition to the proposed use. The attorney for the Smith & Ogle Funeral Home testified that a fraternity or sorority would interfere with his client's business. He stated that his client feared that the noise from parties and other functions would destroy the solemnity of the proceedings at the funeral home and that the two uses were generally incompatible.

Eleanor Vale, a homeowner in the immediate vicinity of the Tempo property, also voiced opposition to the proposed use. She stated that while other properties in the area accommodated eight to ten students, a density of twenty-two residents would be excessive. Bernard Fellis, another homeowner in close proximity to the Tempo property, opposed the use of the property as a fraternity or sorority house on the basis that such a use would change the character of the neighborhood.

Following the hearing, council denied Tempo's application. However, on August 21, 1990, after Tempo had requested reconsideration of the decision, council voted to permit any residential use except a fraternity or sorority house.

Tempo then brought an administrative appeal pursuant to R.C. Chapter 2506 in the Butler County Court of Common Pleas. The common pleas court reversed the decision of council, finding that council had erroneously applied the amended version of the Oxford Zoning Code and that, even under the

proper version of the code, council's distinction between a fraternity/sorority use and other residential uses was arbitrary and capricious and constituted illegal zoning without legislative action. The court's judgment entry was filed on July 8, 1991.

Council brings the instant appeal, setting forth the following assignments of error:

Assignment of Error No. 1

"The trial court erred in concluding that the decision of the city was not based upon the zoning code in effect at the time tempo first applied for the permit."

Assignment of Error No. 2

"The trial court erred in concluding that denial of the application for the additional use was illegal as unlawful zoning."

Assignment of Error No. 3

"The trial court erred in finding that the appellee was unable to derive income from the property."

Assignment of Error No. 4

"The trial court failed to afford the city of Oxford 'due deference.'"

Assignment of Error No. 5

"The decision of the trial court was against the weight of the evidence."

 In its first assignment of error, council claims that the trial court erred in finding that council had applied the amended version of the zoning code. The parties agree that the version of the code in effect at the time the application was filed was controlling in the instant case.

The trial court quoted certain excerpts from the July 3, 1989 hearing that seemed to indicate confusion as to which version of the code was applicable, but it is apparent from the transcript of the entire hearing that council applied the proper version. After several witnesses had alluded to the amendments to the code, Oxford's Law Director, Stephen M. McHugh, reminded council that the amendments were not applicable to the instant case. The members of council demonstrated an understanding of McHugh's admonition in their discussion of the issues. Further, as council argues, had it been under the misapprehension that the amended code was applicable, it would have perceived no necessity to hear evidence concerning a proposed fraternity or sorority house, as such a use was specifically prohibited in the C–3 district

under the amended code. Therefore, the trial court erred in finding that council applied the incorrect version of the code.

Though the trial court erred, we find that its error was harmless. The court explicitly stated that, even had council applied the proper provisions of the code, its decision was arbitrary and contrary to law. The court's discussion of council's decision was therefore premised upon council's application of the correct version of the zoning code. As such, the court's finding as to council's application of the amended code cannot be read to have affected its decision, and council was not prejudiced by that finding. Therefore, the court did not commit reversible error. See, generally, *McQueen v. Goldey* (1985), 20 Ohio App.3d 41, 44, 20 OBR 44, 46–47, 484 N.E.2d 712, 716; Civ.R. 61. The first assignment of error is overruled.

In its third assignment of error, council argues that the trial court erred in finding its application of the zoning code unconstitutional in depriving Tempo of the economically viable use of its property. We need not dwell on this assignment of error, however, as we can discern no such finding in the trial court's decision. While evidence was presented at the hearing suggesting that there were no economically feasible alternatives to the proposed use, we find nothing in the trial court's decision indicating that such evidence played any role in the decision or that the trial court deemed the ordinance unconstitutional on its face or as applied. Therefore, the third assignment of error is overruled.

Council's second, fourth, and fifth assignments of error are closely related and must be discussed together. In all three assignments, council argues that the trial court failed to afford council proper deference in its finding that council's decision was arbitrary, capricious and contrary to law. We must begin with a discussion of the standards of review applicable to the courts of common pleas and the courts of appeals in an administrative appeal. R.C. 2506.04, governing review of administrative appeals, provides in part, as follows:

"The court [of common pleas] may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

■ The Supreme Court of Ohio has stated that "[a] court of common pleas should not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 29, 465 N.E.2d 848, 852. R.C. 2506.04 gives the court of common pleas the authority to weigh the evidence to determine whether the administrative body's decision is properly supported by substantial evidence. *Id.* In making that determination, " 'the court of common pleas must give due deference to the administrative resolution of evidentiary conflicts * * *. However, the findings of the agency are by no means conclusive.' " *Id.*, quoting *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 58 O.O. 51, 131 N.E.2d 390.[2]

■ An appeal to a court of appeals pursuant to R.C. 2506.04 is more limited in scope. *Community Concerned Citizens, Inc. v. Union Twp. Bd. of Zoning Appeals* (Dec. 2, 1991), Clermont App. No. CA91-01-009, unreported, 1991 WL 254633. An appeals court is required to affirm the common pleas court unless it finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence. *Kisil, supra,* 12 Ohio St.3d at 34, 12 OBR at 29, 465 N.E.2d at 852; *Budd Co. v. Mercer* (1984), 14 Ohio App.3d 269, 14 OBR 298, 471 N.E.2d 151. Thus, the authority of a court of appeals "does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court. Within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." *Kisil, supra,* 12 Ohio St.3d at 34, 12 OBR at 30, 465 N.E.2d at 852, fn. 4; R.C. 2506.04.

Having set forth the appropriate standards of review, we must now apply those standards to the trial court's decision in the instant case. The trial court, in essence, found that Tempo had established compliance with the standards set forth in the zoning code and that the refusal of the additional use permit constituted an arbitrary exclusion of the sorority/fraternity use. Council claims that the evidence supported its decision to deny the permit pursuant to the language of the zoning code allowing council to consider

---

**2.** Council argues that the trial court owed greater deference to its decision due to the presumption of the validity of a legislative enactment. See *Hudson v. Albrecht* (1984), 9 Ohio St.3d 69, 71, 9 OBR 273, 274, 458 N.E.2d 852, 855. This argument is not well taken. As Tempo asserts, council's application of the ordinance, and not the validity of the ordinance itself, is at issue in the instant case. Thus, while the trial court owed due deference to council's findings pursuant to *Kisil,* the presumption set forth in *Hudson* is inapplicable.

adjacent uses and structures in deciding upon an application for an additional use permit.

The Oxford Zoning Code sets forth two types of standards for additional uses. First are the standards that relate to the specific characteristics of the proposed use or structure, such as setback and dimensional requirements. Council does not contend that a sorority or fraternity would violate these specific standards.[3] However, the code also includes standards relating to the impact of a proposed use on its surroundings. Section 1124.13(C) of the code provides, in part, as follows:

"In addition to the performance standards required for the district in which the proposed use is located, the Council shall review the particular facts and circumstances of each proposed use in terms of the following standards and shall find adequate evidence showing that such use at the proposed location:

" * * *

"(b) Will be harmonious with and in accordance with the general objectives or any specific objectives of the Oxford Comprehensive Plan;

"(c) Will be designed, constructed, operated and maintained so as to be harmonious with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area;

"(d) Will not be hazardous or disturbing to neighboring uses;

" * * *

"(f) Will not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors[.] * * * "

Council claims that these provisions of Section 1124.13(C) of the zoning code invested it with the discretion to deny the permit based upon the effects of the proposed use on surrounding uses and structures.

 A city must authorize uses consistent with its existing zoning code. *Hydraulic Press Brick Co. v. Council of Independence* (1984), 16 Ohio

---

**3.** Council does, at various points in its brief, discuss the issue of the maximum number of occupants that may reside in the house, and expresses the concern that a fraternity or sorority would necessitate accommodating up to sixty people. This concern is not supported by the record, as the evidence indicates that Tempo requested the authority to house only twenty-two residents. In any event, concerns about density would not require the complete denial of a specific use, as it is undisputed that council is authorized to set conditions regarding the maximum number of residents for a given use or structure, according to the zoning code's density standards.

App.3d 204, 16 OBR 219, 475 N.E.2d 144. However, where a zoning code authorizes the decision-making authority to consider the effects of a proposed use on adjacent uses and structures, the issuance of an additional use permit is not mandatory upon compliance with the standards for a specific use. *Community Concerned Citizens, supra; Chrisman v. Butler Cty. Bd. of Zoning Appeals* (July 25, 1988), Butler App. No. CA87–12–168, unreported, 1988 WL 76819. Nonetheless, the authority to examine the effects of a proposed use on its surroundings does not imply unlimited discretion on the part of the decision-making body, and a decision concerning the effects of a particular use on adjacent uses and structures and uses must be based on substantial, reliable, and credible evidence. *Hydraulic Press Brick, supra; Community Concerned Citizens, supra.* Such a decision, then, while involving the exercise of discretion, is still subject to review by the common pleas courts and the courts of appeals. See, generally, *Community Concerned Citizens, supra;* R.C. 2506.04.

 Applying the standard of review formulated in *Kisil,* we conclude that the trial court's finding of compliance with the zoning code's standards as set forth in Section 1124.13(C) was supported by a preponderance of reliable, probative, and substantial evidence. The evidence indicated that the area immediately surrounding the Tempo property contained a variety of uses, including multiple-resident student housing. There was no showing that these multiple student residential uses were incompatible with surrounding uses or were in any way objectionable to businesses and residents in the area. In his report, Lloyd Towers examined these surrounding uses and concluded that the fraternity or sorority use proposed by Tempo would be harmonious with the vicinity. The report indicated that much of the neighborhood is residential and that a fraternity or sorority would not alter the essential character of the area. Further, the record indicates that fraternity and sorority houses were located within a two-block area of the Tempo property and did not disturb surrounding residents or businesses. Thus, there was ample evidence supporting the conclusion that the proposed use would be compatible with the surrounding area.

Council claims, however, that the evidence tended to show that a fraternity or sorority would not be harmonious with surrounding uses. We are not persuaded. The witnesses who voiced opposition to the proposed use did so only in conclusory terms, and they based their opinions largely on speculation. Though the witnesses expressed fears that a fraternity or sorority would alter the character of the neighborhood, they did not explain why they felt that

such a use would be qualitatively different from other multiple-resident student housing complexes in the area. Similarly, while Eleanor Vale expressed concerns about the number of residents that would occupy the house, she did not set forth any basis for concluding that the house could not properly accommodate the maximum number of residents as specified in the zoning code and in the report prepared by Stuart Meck.

Council also points to the testimony of the attorney for the Smith & Ogle Funeral Home as evidence of a fraternity's incompatibility with the neighborhood. Smith & Ogle's attorney stated that the parties and other activities associated with a fraternity or sorority house would be inappropriate in such close proximity to a funeral home. However, the evidence did not indicate that a fraternity or sorority house would pose any greater threat of disruption than the other forms of student housing in the area. In fact, the evidence indicated that, due to the structured organization of a fraternity or sorority, there would be a greater opportunity for resolving possible difficulties or conflicts with surrounding uses than would be the case with other types of student housing. Thus, council's argument that the proposed use would be more injurious to the community than other residential uses is not supported by the record.

In sum, we find that the trial court gave due deference to the decision of council, and properly found that council's decision was arbitrary and not supported by substantial evidence. Accordingly, council's second, fourth, and fifth assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

JONES, P.J., and WILLIAM W. YOUNG, J., concur.