WHITECO METROCOM, INC. et al., Appellees,

v.

CITY OF COLUMBUS, Appellant.

[Cite as *Whiteco Metrocom, Inc. v. Columbus* (1994), 94 Ohio App.3d 185.]

Court of Appeals of Ohio,
Franklin County.

No. 93APE08–1079.

Decided March 31, 1994.

*Shuler, Plank, Morgan & Brahm, Richard C. Brahm* and *Gordon P. Shuler,* for appellees Whiteco Metrocom, Inc. and Reywal Partnership.

*Ronald J. O'Brien,* City Attorney, and *Kimberly H. Mayhew,* Assistant City Attorney, for appellant.

PETREE, Judge.

Appellant, city of Columbus ("city"), appeals from the judgment of the Franklin County Court of Common Pleas which reversed a decision of the Columbus Graphics Commission rendered in the city's favor.

Appellant sets forth three assignments of error:

"I.   The court erred in ruling that the portion of the roadway running west from Stelzer Road toward I–670 was not a part of the interstate system and therefore not subject to the 660–foot setback required by C.C. 3379.01 and R.C. 5516.01.

"II.   The court erred in ruling that the city was estopped from revoking a billboard permit issued to the appellee allowing the erection of a billboard within 660 feet of the interstate system located within the city of Columbus.

"III.   The decision of the trial court failed to establish in what manner the decision of the Graphics Commission was either unconstitutional, illegal, arbi-

trary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence as required by R.C. 2506.04."

On October 18, 1988, appellee, Whiteco Metrocom, Inc. ("Whiteco"), applied for a permit to construct a billboard at the northwest corner of the intersection of Stelzer Road and Airport Connector Boulevard. During the city's review process, Whiteco obtained a copy of the schematic plan for the portion of the I–670 project that is the subject of the within appeal from the Ohio Department of Transportation.

Whiteco presented this copy of the schematic plan to Robert C. Smith, the head of the city's Expressway Engineering and Construction Division, who indicated a line on the schematic known as a "funding line." Smith drew an arrow pointing eastward from the line and labeled the area to the east of the line "secondary system." He likewise drew an arrow pointing westward from the line and labeled the area to the west of the line "interstate system." Smith signed his name to this schematic and returned it to Whiteco.

There is some disagreement as to what actually took place at the time Smith made this notation on the schematic, and how the schematic was thereafter used by Whiteco as part of its permit application. The city argues in its brief that a Whiteco representative approached Smith and requested that he indicate on the schematic the source of funding for the portion of Airport Connector Boulevard that is the subject of this appeal. The city further argues that in response to Whiteco's inquiry, Smith indicated that federal funds paid for seventy-five percent of the portion of the roadway lying east of the line toward Stelzer Road and for ninety percent of the roadway lying southwest of the funding line.

According to the city, Whiteco attached the schematic to its permit application and misrepresented Smith's notation to the Department of Development by stating that Smith had determined that the portion east of the funding line was not part of the interstate system. The city contends that it issued the permit based upon this misrepresentation. The city further contends that Smith did not indicate to Whiteco's representatives that this funding line was dispositive as to a determination of what is and is not part of the interstate system.

The city's claim of misrepresentation by Whiteco's representatives is not supported by the record in this case. Smith was not called as a witness at the Graphics Commission hearing to testify as to his purpose in indicating "interstate" or "secondary system" on the schematic, or to determine exactly what he told Whiteco's representatives. Furthermore, the city relies upon Document 16, a part of the Graphic Commission's staff report, as evidence that Whiteco's representatives misrepresented the schematic plan to the Development Department. In its report, the commission stated, "[a]ccording to Whiteco Metrocom, owner of the subject graphic, the annotated drawing described the limits of the

interstate system right-of-way in the vicinity of the subject graphic." However, this staff report was unsworn and only purports to relate alleged misrepresentations made by an unknown Whiteco representative to an unknown city representative. Therefore, the city's claim of Whiteco's misrepresentation has no support in the record.

The city issued the permit on June 2, 1989 and, thereafter, Whiteco constructed its billboard on September 1, 1989. On March 29, 1990, in a letter to Brad Jones of the city's Development Regulations Division, Smith indicated that he considered the ramps between Stelzer Road and Cassady Avenue to be a portion of the interstate system, since they provide access to and from I–670. The Graphics Commission staff reviewed Whiteco's permit application in response to Smith's letter. On January 18, 1991, the city's development regulation administrator notified Whiteco that its permit for the billboard was being revoked because the billboard's location was "unacceptable under the provisions of Section 3379.01, Graphics Along the Interstate System."

On February 6, 1991, Whiteco appealed the revocation to the Graphics Commission. On May 21, 1991, the commission voted four to three to uphold the administrator's revocation determination.

On June 17, 1991, Whiteco appealed the decision of the Graphics Commission to the Franklin County Court of Common Pleas. The lower court rendered its decision in favor of Whiteco on June 10, 1993, and journalized the decision by entry dated July 6, 1993. The city has timely appealed the common pleas court's decision.

By its first assignment of error, the city argues that the court erred in determining that the portion of the roadway that is the subject of the within appeal is not part of the interstate system and therefore not subject to the six hundred sixty-foot setback restriction required by the C.C. 3379.01. Specifically, the city argues that the lower court erred in its determination that only roadways funded with ninety percent interstate system funds could be included in the definition of "interstate" pursuant to C.C. 3375.26. The city further argues that the portion of the roadway running east of the funding line is also a part of the interstate system and therefore subject to the setback controls set forth in C.C. 3379.01.

C.C. 3379.01, entitled "Graphics along the Interstate System," states in pertinent part:

"(a) Except as otherwise provided in this Chapter no graphic shall be erected or permitted to remain in existence which:

" * * *

"(3) Is within six hundred sixty (660) feet of any Interstate System right-of-way line and can be perceived at any time by the operator of a motor vehicle proceeding in any lawful direction within the Interstate System right-of-way."

The term "interstate," as used in C.C. 3379.01, is defined in C.C. 3375.26, which states:

"Interstate System: All portions or the national system of interstate and defense highways located within the corporate limits constructed in accordance with Public Law 627, the 'Federal–Aid Highway Act of 1956' and in accordance with standards adopted and promulgated pursuant to such act."

The lower court was correct in determining that the issue to be resolved in this case is "where does the interstate highway system end and where does the secondary highway system begin for purposes of locating a sign?" Such resolution necessitates an interpretation and application of the term "interstate" as used in the ordinances cited above.

The lower court accepted Whiteco's assertion that the defining factor for an interstate roadway is its source of funding. The city argues, to the contrary, that the roadway's source of funding is not the dispositive factor in determining what is and what is not part of the interstate system.

■ The term "interstate," as used in C.C. 3379.01, is defined in C.C. 3375.26. However, the drafters of C.C. 3375.26 did not define "interstate" in narrative form, but defined that term by reference to an Act of Congress, Public Law 627. In its brief to this court, Whiteco presents an exhaustive and detailed analysis of the history of Public Law 627 and amendments thereto, and concludes that the only possible conclusion that can be drawn from this complex statutory scheme is that the interstate system must be determined by its source of funding. We have examined the statutes and codes cited by Whiteco in its brief, and are persuaded that the interstate system is, indeed, to be determined by its source of funding.

The reference in C.C. 3375.26 is to Public Law 627, the Federal Aid to Highway Act of 1956. This statute has been codified and amended in Sections 101 and 103, Title 23, U.S.Code. The Federal Aid to Highway Act of 1956 is an authorization appropriating and spending funds for a system of national highways. Section 101, Title 23, U.S.Code defines the federal-aid system of highways to include four types of systems defined as follows: the Federal-aid Primary System (Section 103[b][1]), the Federal-aid Secondary System (Section 103[c][1]), the Federal-aid Urban System (Section 103[d][1]), and the Interstate System (Section 103[e][1]).

It is clear that these statutes establish separate funding for each of the different types of roadway systems, and that Congress intended that these roadways be defined by their respective sources of funding. It is also clear that

the designations are mutually exclusive. For example, a roadway designated exclusively as part of the Federal-aid to Urban System cannot thereafter be designated as part of the Interstate System.

In the case at bar, the schematic plan shows these sources of funding as established by agreement between federal, state and city entities. At the Graphics Commission hearing, Whiteco presented a letter confirming that the federal aid designation for Airport Connector Boulevard between Stelzer Road and Cassady Avenue was approved by the Federal Highway Administration as part of the Federal-aid to Urban System.

In addition, Smith marked the words "interstate system" and "secondary system" on the schematic as an indication of the sources of funding for the different portions of the roadway. These annotations correspond directly to the definitions as set forth in Section 103, Title 23, U.S.Code.

The city has presented no legal theory contrary to Whiteco's assertion that the source of federal funding determines what is and what is not part of the interstate system. Indeed, the city agrees that the funding line marked on the schematic designates "where the federal government decreases its financial contribution by fifteen percent." However, the city offers no alternative method for determining what is and what is not part of the interstate system.

It has been established, and the city agrees, that the city's own codes do not provide a clear, concise definition of the term "interstate," but instead rely on those sections of the United States Code which classify the roadways according to their sources of funding. The city's code is, at best, vague and ambiguous. The city admits that C.C. 3375.26 contains ambiguous wording, and that the reference to Public Law 627 serves only to "compound the problem."

The city further admits that the ambiguous language contained in C.C. 3375.26 and its reference to Public Law 627 does not provide a definition for "interstate system" that can easily be applied to C.C. 3379.01. Also, the city states that the problem with C.C. 3375.26 is that it attempts to use "a federal law to accomplish an objective that is somewhat divergent from the federal regulation's primary purpose which is to provide funding for various types of highway."

■ The city has chosen to define the term "interstate" in this most imprecise manner, and this choice has resulted in a code section that is both vague and ambiguous. It has been stated that because city ordinances or regulations concerned with zoning matters deprive property owners of certain uses of their property, they must be strictly construed and will not be extended to include limitations by implication. *Van Camp v. Riley* (1984), 16 Ohio App.3d 457, 16 OBR 539, 476 N.E.2d 1078. Statutes imposing restrictions on the use of private property must be strictly construed. *State ex rel. Moore Oil Co. v. Dauben*

(1919), 99 Ohio St. 406, 124 N.E. 232, paragraph one of the syllabus. All doubts should be resolved in favor of the free use of private property, rather than in favor of restricting the use of such property. *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 20 O.O.3d 244, 421 N.E.2d 152.

■ Therefore, based upon the foregoing, we find that the lower court properly determined that the funding line is the conclusive demarcation for determining what is and what is not part of the interstate system, as defined in C.C. 3375.26 and as applied to C.C. 3379.01. The portion of the roadway on which the billboard sits is therefore not subject to the six hundred sixty-foot setback required by C.C. 3379.01.

Accordingly, we find the first assignment of error not well taken.

By its second assignment of error, the city contends that the lower court erred when it determined that the city was estopped from revoking the billboard permit. In *Andres v. Perrsyburg* (1988), 47 Ohio App.3d 51, 546 N.E.2d 1377, the Court of Appeals for Wood County set out the elements necessary to establish a claim for equitable estoppel:

" * * * Four prima facie elements which the plaintiff must set forth are: (1) that the party knowingly made a false representation or concealment of a material fact (or at least took a position contrary to that now taken); (2) that the representation must be made in a misleading manner with the intention or expectation that another would rely on it to act; (3) that the plaintiff actually relied on the representation; and (4) that plaintiff relied to his detriment so much that unless the party is estopped from asserting the truth or a contrary position, plaintiff would suffer loss. * * * " *Id.* at 56, 546 N.E.2d at 1383.

■ Whiteco has established all four elements necessary to a claim for equitable estoppel. The city initially issued the permit to Whiteco and has now taken a contrary position by attempting to revoke the permit. The city must have expected that Whiteco would rely upon the issuance of the permit to construct the billboard. In reliance on the issuance of the permit and before Whiteco had any reason to question the permit's validity, Whiteco constructed the billboard. Whiteco has relied to its detriment on the city's permit issuance by constructing the billboard. Although Whiteco has provided no evidence of expenses incurred in the construction of the billboard, it is clear that substantial expense must have been incurred in the construction process, and that revocation of the permit eighteen months after its issuance would certainly result in a loss to Whiteco.

The city does not challenge Whiteco's equitable estoppel claim on the ground that it has failed to establish the necessary elements. Instead, the city argues

that, since the initial issuance of the permit by the city was not legally authorized, the doctrine of estoppel was not available to Whiteco.

▆▆▆ It is well settled that the doctrine of equitable estoppel can be applied to municipalities as well as to individuals under certain circumstances. When a municipality acts within the scope of its authority, the doctrine of equitable estoppel can be invoked against the municipality. *Andres, supra.* It is also well settled that the doctrine of equitable estoppel does not apply where the subject matter involved is *ultra vires,* illegal, or *malum prohibitum. Baxter v. Manchester* (1940), 64 Ohio App. 220, 18 O.O. 77, 28 N.E.2d 672.

▆▆▆ Furthermore, a municipality will be bound only by representations authorized to be made by its officers and agents. *Andres, supra,* 47 Ohio App.3d at 57, 546 N.E.2d at 1384. In other words, estoppel applies against a municipality if the city officer or agent who issued the permit was authorized to do so, and the issuance of the permit was not illegal at the time. We have already determined, in the first assignment of error, that the permit was validly issued, as the billboard was not constructed within six hundred sixty-feet of the "interstate" system as defined by the city's own code.

We further find evidence in the record to support Whiteco's assertion that the city official who issued the permit was authorized to do so. At the Graphics Commission hearing, Brad Jones, the person who signed the Certificate of Zoning Clearance necessary for the billboard permit to be issued, testified that all evidence and paperwork submitted to him in conjunction with the permit application was true and correct and adequate to grant a permit. Specifically, Jones stated:

" * * * We would not have granted a permit if we considered the information to be either incorrect or insufficient.

"Based upon my understanding of the facts at the time, we issued the permit."

Based on the foregoing, we find that the lower court was correct in determining that the city was estopped from revoking the validly issued permit, as the permit was neither illegal nor unauthorized. Thus, the second assignment of error is not well taken.

In the third assignment of error, the city argues that the lower court failed to establish how the Graphics Commission's decision was either unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence as required by R.C. 2506.04.

The city argues that, since the Graphics Commission's determination to uphold the city's revocation of the permit was reasonable and supported by the evidence, the lower court erred in reversing that decision.

The standard of review applicable to the case at bar is found in R.C. 2506.04, which states:

"The court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code."

The only evidence before the lower court consisted of that which had been considered by the Graphics Commission. No additional evidence was presented to the lower court. In *Budd Co. v. Mercer* (1984), 14 Ohio App.3d 269, 14 OBR 298, 471 N.E.2d 151, the court considered a case in which the evidence before the lower court was limited to that which had been before the administrative agency. The court summarized the functions of both the trial court and the appellate court on review, as follows:

"It must also be remembered that the appeal in the common pleas court was an appeal from an administrative agency and, as such, was governed by R.C. Chapter 2506. See *Schoell v. Sheboy* (1973), 34 Ohio App.2d 168, 171–172 [63 O.O.2d 285, 286–287, 296 N.E.2d 842, 844–845]. Specifically, the common pleas court is confined to the transcript compiled during the agency's proceedings (R.C. 2506.03, 2506.02), unless one of the conditions specified in the statute appears on the face of the transcript or by affidavit. R.C. 2506.03(A) and (B). See *Dvorak v. Municipal Civil Service Comm.* (1976), 46 Ohio St.2d 99 [75 O.O.2d 165, 346 N.E.2d 157]; *Grant v. Washington Twp.* (1963), 1 Ohio App.2d 84, 86 [30 O.O.2d 108, 109, 203 N.E.2d 859, 861]. When reviewing the decision of an administrative agency, the common pleas court, based on the entire record, may find that the agency's order, adjudication or decision is 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence * * *.' R.C. 2506.04. In undertaking this hybrid form of review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111 [17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267], and the court may not, especially in areas of administrative expertise, blatantly substitute its judgment for that of the agency. *Dudukovich v. Housing Auth.* (1979), 58 Ohio St.2d 202, 207 [12 O.O.3d 198, 202, 389 N.E.2d 1113, 1117].

" * * * *

"The key term in R.C. 2506.04 is 'preponderance,' *Dudukovich, supra,* [58 Ohio St.2d] at 207 [12 O.O.3d at 202, 389 N.E.2d at 1117]. 'If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision.' *Id.* In determining whether the common pleas court properly applied the standard of review set forth in R.C. 2506.04, this court has a limited function. This court's determination is limited to the question of whether, as a matter of law, a preponderance of reliable, probative and substantial evidence exists to support the decision of the board. See *Dudukovich, supra,* [58 Ohio St.2d] at 208 [12 O.O.3d at 202, 389 N.E.2d at 1117]. Accordingly, upon our review of the record in each appellant's case, it is our determination that, as a matter of law, a preponderance of reliable, probative and substantial evidence exists in the transcript of the board's proceedings. The common pleas court, therefore, should have affirmed the decision of the board. On this basis alone, the judgment of the common pleas court must be reversed." *Id.,* 14 Ohio App.3d at 273–274, 14 OBR at 302–304, 471 N.E.2d at 155–156.

In the case at bar, the lower court's decision states that the Graphics Commission's decision "is not supported by the law or the facts and thus will be reversed." Thus, it may be inferred that the lower court found the commission's order to be unsupported by a preponderance of substantial, reliable and probative evidence.

We agree that the decision of the Graphics Commission was unsupported by a preponderance of reliable, substantial and probative evidence. The city presented no witnesses or testimony in support of any alternative construction of its own city codes. In fact, the city did little more than urge the commission to uphold the administrator's revocation decision, so that the codes and statutes at issue could then be interpreted by the lower court. The lower court then proceeded to do what the city expected it to do—interpret the codes and statutes and applied that interpretation to the facts of this case. On appeal, the city argues that the lower court erred in its interpretation. However, as previously stated, the city provided no contrary legal argument.

The lower court found that the Graphics Commission's determination that the sources of a roadway's funding was not a valid way to determine what constitutes the interstate for purposes of C.C. 3375.26 was not supported by a preponderance of reliable, substantial and probative evidence produced at the hearing. We agree with the lower court's determination and, accordingly, we find the third assignment of error not well taken.

For the foregoing reasons, appellant's assignments are overruled and the decision of the lower court is affirmed.

*Judgment affirmed.*

BOWMAN and STRAUSBAUGH, JJ., concur.

Dean Strausbaugh, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.