OPINION
Plaintiff-appellant, Dennis Riddle, appeals from a verdict by the Clermont County Municipal Court for the defendants-appellees, city of Loveland ("Loveland") and Wayne Barfels, the former city manager ("Barfels").[1] Appellant argues that the ruling of the trial court was against the manifest weight of the evidence.
The case revolves around two salary disputes during appellant's tenure as a building inspector with Loveland. Appellant originally interviewed for a part time position with two individuals, Barfels and Paul Stewart, the developmental director ("Stewart"). According to appellant, the position was considered part time because he planned to work six months in the summer and then was going to go to school in the winter. Sometime after the interview, in April of 1988, Barfels spoke to appellant and told him that he was over qualified for the position and that he could not be paid more than $10 per hour. According to appellant, he assumed that Barfels' statements meant he would earn $10 per hour. Barfels testified that, according to a Loveland ordinance, $10 per hour was the top of the wage scale for a part time position and typically new employees had a six-month probationary period. For that reason, appellant's salary was set at $9 per hour. Appellant never received any documents regarding his starting salary nor did he ever ask his salary before starting work.
When appellant received his first paycheck, he realized that he was receiving $9 per hour. He brought this to the attention of his supervisor, Stewart, who told him he would address the issues with Barfels. After returning from Barfels' office, Stewart informed appellant that he could not do anything about his current rate of pay. Despite this, appellant continued to work for Loveland at $9 per hour. In December of 1988, his pay rate increased to $9.50 per hour. At that point, it was clear he would also be needed to work in the winter. After being given three options by Stewart, he chose to work thirty-two hours a week for the entire year. On October 5, 1989, his pay was increased to $10 per hour, the top of the pay rate for a part time city worker in Loveland.
On March 27, 1990, Loveland passed emergency ordinance 1990-20. The ordinance established an employer Public Employee Retirement Program ("PERS") pick up program. This program allowed the city to pay mandatory PERS deductions for each city employee. The deduction is 8.5 percent of the gross salary of each employee. In return, current employee salaries and salary ceilings were reduced by 8.5 percent. To help enact the program, Ordinance 1990-23, was approved by the Loveland city council on April 10, 1990, two months before appellant became a full-time building inspector. Section Five of that ordinance accounted for the employer PERS pick up program by stating that the current salaries and ranges of all employees covered by the program would be reduced by the same 8.5 percent. When these changes took place, appellant was not yet working full time.
In June 1990, appellant was given the option of working full time. According to appellant, appellant accepted the full-time building inspector position because, inter alia, Barfels promised him a $2,500 merit increase upon earning a class three certification from the state of Ohio. This certification allows a building inspector to have additional responsibilities in inspecting certain commercial buildings. Barfels states he told appellant that upon being certified his salary would be raised to the top of the building inspector salary scale. He also testified he expected appellant to earn his certificate within six months.
Appellant testified that he negotiated with Barfels for an appropriate salary scale for the building inspector position. In Loveland, the maximum a city employee can receive is set by ordinances passed by the city council. According to Barfels, a city ordinance, approved by the Loveland city council, lists either a ceiling or a range for all full-time city workers. Barfels, as the city manager, must set salaries within the range or ceiling. The ceiling for the building inspector was originally going to be $26,500. Appellant negotiated for a ceiling of $27,500, since his starting salary was $25,000. He testified that was important because this allowed him to receive his full merit increase upon getting his class three certification. Ordinance 1990-38, passed on June 10, 1990, does list the salary range for building inspectors at $24,000-$27,500. But Section 2 specifically states it is an amendment to Ordinance 1990-23, which reduced current salary scales by 8.5 percent. In essence, the building inspector salary scale, although newly created, was subject to the same adjustment as all other city employee salary scales. Therefore, with the adjustment required by Section 5 of Ordinance 1990-23, the top of the building inspector salary scale at that time was $25,162.50 rather than $27,500.
The record indicates that as a part time employee, appellant had to pay PERS directly from his salary. He testified that he was aware that when he became a full-time employee, the employer PERS pick up program was in effect. The only written document which reflects appellant's understanding of the initial salary scale are notes on a draft of what eventually became Ordinance 1990-38. He states that upon receiving his class three certification he would get an "instant increase" to $27,500. He also states that, due to his past experience with Barfels, he did not expect Barfels to honor that commitment. The record does not include any documents from the city promising a $2,500 merit increase.
During appellant's tenure with Loveland, he received a series of cost of living increases. These increases, approved in various yearly ordinances, were all either 4 percent or 4.5 percent. Also, in most of these yearly ordinances, a new salary scale was listed for city employees, including the building inspector. In April of 1991, appellant's salary went from $25,000 to $26,000. On July 11, 1991, appellant received an anniversary increase (of his start as a full-time building inspector) to the top of the new salary scale, $26,169. Ordinance 1992-17, approved to begin in April 1992, gave appellant another cost of living raise to $27,347, the top of the building inspector wage scale pursuant to Ordinance 1992-17. Another raise in April of 1993 made his salary $28,578.
In July of 1993, three years after he began work full time, appellant received his class three certification. He raised the issue of his merit increase with Barfels and also Duane Cross, who replaced Stewart as appellant's direct supervisor. Barfels testified that he told appellant the city never promised him a $2,500 merit increase upon earning his class three certification. Appellant addressed the same issue in writing in a July 1, 1994 memorandum to Barfels and Cross. On July 22, 1993, after realizing his payroll check had not been increased, he sent a similar memorandum. However, since appellant was already at the top of the salary scale, Barfels testified that he could not receive a raise.
However, appellant continued to work for the city despite not receiving the merit increase. In April 1994, another cost of living increase, in Ordinance 1994-20, raised his salary to $29,864, the top of the salary scale. In June 1994, appellant wrote a letter to the finance director, William Taphorn, stating that he was owed his merit increase for all work since June of 1993.
The dispute between appellant and Loveland was never resolved and, on June 15, 1994, appellant resigned from his position as building inspector. He insisted Barfels promised him a $2,500 merit increase upon receiving a class 3 certification, regardless of other cost of living increases. Barfels maintained he only told appellant that his salary would be increased to the top of the wage scale. The record indicates since July 11, 1991, appellant was paid the top of the building inspector wage scale.
On July 1994, appellant, pro se,[2] filed a claim for breach of contract[3] with the small claims division of the Clermont County Municipal Court for $2,000.[4] On September 1, 1994, after a motion by the defendants, the case was transferred to the regular docket of the Clermont County Municipal Court and appellant amended his claim to $7,823.93. Defendants' motion for summary judgment was overruled on January 10, 1996 and the case was tried before a magistrate on July 16, 1996. The magistrate's report, filed March 21, 1997, found for the defendants and the decision was adopted by Judge James A. Shriver on July 25, 1997. A timely notice of appeal followed.
In four assignments of error, appellant argues that the verdict for the defendants, on all of plaintiff's theories of liability, was against the manifest weight of the evidence. It is axiomatic that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 280.
Both appellant's first and second assignments of error discuss the merit increase appellant alleges he is owed. He claims that the finding for the defendants on appellant's claims of estoppel was against the manifest weight of the evidence. Appellant interposes the closely related, but separate, doctrines of equitable estoppel and promissory estoppel.
The doctrine of equitable estoppel is based on the proposition that "one party will not be permitted to deny that which, by his words, his acts, or his silence (when there was an obligation to speak), he has induced a second party reasonably and in good faith to assume and rely upon to that party's prejudice or pecuniary disadvantage." First Federal S. L. Assn v. Perry's Landing (1983), 11 Ohio App.3d 135, 144. A claim based on equitable estoppel has four necessary elements: 1) there must be a factual (not a promissory) representation by a party, 2) it must be misleading, 3) the representation must induce actual reliance by a second party and that reliance must be reasonable and in good faith and 4) the second party suffered some prejudice if the original party is not estopped from denying or contradicting his representation. Id. at 145.
Ohio follows the Restatement of Contracts view of what constitutes promissory estoppel. Talley v. Teamsters Local No. 377 (1976), 48 Ohio St.2d 142, 146. Section 90 of the Restatement of the Law, Contracts 2d (1973) states as follows: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.
Initially, we note that Barfels was not liable for any acts within the scope of his employment unless the acts were reckless, for a malicious purpose or in bad faith. R.C. 2744.03(A)(6). See, also, Blankenship v. Enright (1990), 67 Ohio App.3d 303, 309-10. Our review of the record indicates the magistrate had credible evidence to conclude Barfels acted only in his employment and his actions did not fit any of the exceptions for personal liability. Therefore, as a matter of law, Barfels was not subject to any personal liability and all the assignments of error are overruled with respect to Barfels and our analysis of the merits of the claim apply only to Loveland.
Unlike Barfels, equitable estoppel can be used against Loveland unless the subject is illegal or ultra vires. Metrocom v. City of Columbus (1994), 94 Ohio App.3d 185, 192. The same rule applies to promissory estoppel. Pilot Oil Corporation v. Ohio Dept. of Transportation (1995), 102 Ohio App.3d 278, 283. However, the record does not indicate the magistrate erred in finding for Loveland on the merits of the claim. There are no written documents showing appellant was entitled to a $2,500 merit increase upon earning his class three certification. Barfels stated the only agreement was that appellant would automatically receive the top salary allowed for a full-time building inspector. The only evidence the merit increase was to be awarded, regardless of cost of living increases, comes from appellant's testimony.
The record also indicates appellant continued to work even after Barfels told him he never agreed to a $2,500 merit increase. Appellant's notes from 1990, before he accepted the full-time position, state he never expected to receive the merit increase. Therefore, the record provided credible evidence for the magistrate to conclude that: 1) Barfels never made any statement or promise for a $2,500 merit increase and 2) even assuming Barfels had made such a representation, appellant cannot show reasonable reliance. Therefore, whether argued in terms of promissory estoppel or equitable estoppel, the first and second assignments of error are overruled.
Appellant's third assignment of error argues that the magistrate's decision, finding appellant had failed to prove Loveland was equitably estopped from denying him $10 per hour from the beginning of his part time employment with Loveland, was against the manifest weight of evidence. The time involved is between April 1988, the date of appellant's hiring, and October 1989, when appellant's salary was raised to $10 per hour. At the initial interview, Barfels told appellant that he could not be paid more than $10 per hour. After learning his actual starting salary, Stewart told appellant that his current rate of pay could not be changed. Despite this reality, appellant continued to work for Loveland at $9 per hour and later $9.50 per hour. The record does not indicate appellant was told the difference in salary would ever be recouped. In fact, the undisputed testimony is Stewart gave appellant exactly the opposite impression. Therefore, even assuming the other elements were present, any equitable estoppel claim fails because appellant cannot show actual or reasonable reliance. The third assignment of error is overruled.
Appellant's fourth assignment of error states that the magistrate's ruling that appellant had not been underpaid as a result of incorrect calculations of the employer PERS pick-up program was against the manifest weight of the evidence. The employer PERS pick up program, passed in emergency Loveland Ordinance 1990-20, required Loveland, instead of city employees, to pay PERS, at the rate of 8.5 percent of an employee's salary, to the state of Ohio. Loveland also passed Ordinance 1990-23 on April 10, 1990, which reduced current employee salaries and salary scales by 8.5 percent. At that point, appellant was not a full time city worker.
In June 1990, appellant was made a full time building inspector and agreed to a starting salary of $25,000. Originally, the salary scale was drafted as $24,000 to $26,500. However, after a conversation with Barfels, the salary scale for the ordinance was changed to $25,000 to $27,500. Due to the fact that the final ordinance, 1990-38, amended to Ordinance 1990-23, the top of the salary scale was $25,162.50, an 8.5 percent decrease. The salary scales were later raised, and from July 11, 1991 to June 15, 1994, when appellant resigned, he was paid the top of the building inspector pay scale or ceiling.
The record does show appellant may not have fully been aware of the employer PERS pick up program's impact on salary scales or ceilings. However, all the Loveland ordinances were followed. Appellant never had his salary reduced and his initial salary scale was adjusted exactly as Ordinance 1990-23 mandated. The fourth assignment of error is overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.
[1] Barfels was city manager throughout appellant's tenure as a Loveland building inspector.
[2] Appellant employed an attorney at trial but has acted pro se for this appeal. Due to the fact his reply brief included documents not in the appellate record, those documents and any references to them were stricken by this court. See App.R. 9(A).
[3] On appeal, the original breach of contract theory was not raised.
[4] In his complaint, appellant had written $2,356.16 for lost wages, but instead sought $2,000, the jurisdictional limit of the small claims division.