Plaintiff-appellant, First Bank of Marietta, appeals from a judgment of the Franklin County Common Pleas Court in favor of plaintiff on its claims against defendant-appellee, L.C. Limited, and its partners, Larry Clay, Shirley Clay, and Linda Knight (collectively, "defendant").
In April of 1986, L.C. Limited, a limited partnership, borrowed $326,400 from First Realty Credit Corporation to buy an apartment building. The parties executed a mortgage note, as well as a mortgage deed to secure the loan. The note was assigned to plaintiff in the summer of 1988 pursuant to a participation agreement between plaintiff and First Realty Credit Corporation. The interest rate in the note was eleven percent for the first year. Every year thereafter for the next five years, the rate was set at 3.75 percent above the most recent weekly average yield of United States treasury securities, not to exceed sixteen percent nor fall below ten percent. Monthly payments on the note were due on the first day of each month; if payments were not received by the fifteenth of the month, plaintiff could charge a six percent late fee on the amount of the payment.
The note further provided that on May 1, 1991, defendant was to pay off the entire amount of the note, plus any late charges incurred. Defendant had the option under the note to extend the repayment date for three years until May 1, 1994. The option was available only if (1) defendant was not in default on the note, and (2) defendant sustained no adverse change in its financial condition. Pursuant to the extension option, defendant requested and plaintiff granted an extension of the note until May 1, 1994. During the extension period, the interest rate, while still tied to the average yield of United States treasury securities, could not be higher than five percent above or lower than one percent below the interest rate that was in effect for the first year of the extension period. The rate at the beginning of the extension period was ten percent, changing the ceiling on the interest rate to fifteen percent and the floor to nine percent.
As the repayment date neared, the parties entered into negotiations again to refinance or extend the note. Even after that date passed, the parties continued discussions, plaintiff continued to send defendant monthly notices of the amount of its s monthly payments, and defendant continued to make monthly payments on the note. No agreement between the parties ever was reached and defendant admits to never paying the entire amount of the note, having stopped making payments after May of 1997.
Failing to reach a resolution, plaintiff filed suit against defendant and a judgment was entered in plaintiff's favor for $300,703.04 plus interest. Defendant moved, pursuant to Civ.R. 60(B), to vacate that judgment. After a hearing, the trial court granted defendant's motion and set aside plaintiff's judgment.
After the court set aside its first judgment, plaintiff audited the loan to determine the actual balance owed, and it discovered several items. Initially, defendant had failed to pay the property tax on the real estate. Indeed, Shirley Clay, a general partner in L.C. Limited, admitted at trial that defendant did not timely pay real estate taxes on the property from June 1993 through June 1995. Pursuant to the agreement between the parties, defendant's failure to perform any obligations, including paying property taxes, allowed plaintiff to raise the interest rate by four percent. Defendant is now current on its property taxes.
Next, plaintiff's audit also determined that beginning in May of 1992 and continuing until February of 1993, the interest rate charged defendant pursuant to plaintiff's monthly notices fell below the nine percent floor. Defendant made its payments at the rate set forth in the notices. Plaintiff admitted it mistakenly charged defendant a rate lower than the note, but it claimed that the lower rate was a clerical error.
Lastly, plaintiff discovered two potential late payment charges. Defendant made as many as twenty-seven late monthly payments, some extending to before the note was renegotiated. Defendant, however, was never charged the six percent late fee as allowed under the note. In addition, plaintiff sought to add a six percent late fee, exceeding $20,000, on the total amount of the note for defendant's failure to pay off the entire amount of the note when it was due.
The matter ultimately was tried to the court without a jury. After much discussion about the final amount of the judgment entry, the trial court entered a judgment for plaintiff in the amount of $278,207.20 plus late charges for sixteen late payments, default interest rates, court costs and ten percent interest beginning on June 9, 1998. Plaintiff moved for a new trial or for relief from judgment pursuant to Civ.R. 59(A) and 60(B), respectively, arguing that the damages were inadequate and were against the weight of the evidence. The trial court denied plaintiff's motions. Plaintiff appeals, setting forth the following assignments of error.
I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ITS FINDING IS CONTRARY TO THE WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION WHEN THE TRIAL COURT IMPROPERLY DETERMINED THE AWARD OF DAMAGES DUE AND OWING AS OF MAY 5, 1997.
II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ALLOWING EVIDENCE TO BE ADMITTED FROM SETTLEMENT NEGOTIATIONS OVER THE OBJECTION OF PLAINTIFF AND IN VIOLATION OF RULE 408 OF THE OHIO RULES OF EVIDENCE.
III. THE TRIAL COURT ERRED AS A MATTER OF LAW AND THE JUDGMENT ENTRY IS CONTRARY TO THE WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION WHEN THE TRIAL COURT FAILED TO AWARD ANY INTEREST ON THE OUTSTANDING PRINCIPAL BALANCE FROM MAY 5, 1997 THROUGH JUNE 9, 1998.
IV. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ITS DECISION IS CONTRARY TO THE WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION WHEN THE TRIAL COURT REFORMED THE WRITTEN MORTGAGE DEED AND PROMISSORY NOTE TO THE BENEFIT OF THE APPELLEES BASED UPON A UNILATERAL MISTAKE OF APPELLANT.
V. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ITS DECISION WAS AN ABUSE OF DISCRETION WHEN THE TRIAL COURT FAILED TO ORDER FORECLOSURE AND TO AWARD ATTORNEY'S FEES AND COLLECTION COSTS TO THE APPELLANT WHICH WERE SPECIFICALLY PROVIDED FOR IN THE NOTE EXECUTED BETWEEN THE PARTIES.
Preliminarily, plaintiff's second assignment of error contends the trial court erred in admitting certain testimony and evidence from settlement negotiations in violation of Evid.R. 408. An appellate court which reviews the trial court's admission or exclusion of evidence generally limits its review to whether the lower court abused its discretion. State v. Finnerty (1989),45 Ohio St.3d 104. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1984), 5 Ohio St.3d 217.
"Evid. R. 408 is meant to exclude offers to compromise and of compromises to prove the liability for, or invalidity of, the claim or its amount when liability, invalidity or the amount is at issue. The exclusion does not apply when the evidence is presented for a purpose other than proving liability, invalidity, or the amount of the claim." Shimola v. Cleveland (1992),89 Ohio App.3d 505, 511.
Plaintiff contends that much of the testimony offered at trial was a direct result of discussions between the parties in an attempt to refinance the loan in question or to settle the matters. Plaintiff in essence asserts that once defendant did not pay off the entire note when it was due, any communications between the parties were to settle or negotiate the claim. In support, plaintiff notes five portions of the transcript where it alleges the trial court incorrectly admitted evidence, including improper testimony and all of defendant's admitted exhibits.
While Evid.R. 408 excludes offers of compromise used to prove liability or the amount of a claim, the questioning at issue was directed to proving that negotiations had been taking place between the parties after the May 1994 deadline, that plaintiff accepted payments even after the payoff date, and that confusion resulted in ascertaining the proper amount defendant owed plaintiff. Indeed, even plaintiff's counsel asked Clay whether she was in negotiations with the bank. Because the testimony objected to was not offered to prove liability or the amount due, the trial court did not err in allowing the testimony over plaintiff's objections.
Plaintiff objected to defendant's trial exhibits 1, 6, 7, 10, 12, and 13 on the same grounds. Exhibits 6, 7, and 12 do not refer to negotiations between the parties and were properly admitted. Exhibit 1, while specifically discussing the extension of the loan, was offered to show (1) plaintiff's knowledge of defendant's failure to pay property taxes, (2) plaintiff's knowledge that interest rates charged were below the floor set by the note, and (3) plaintiff's method of imposing late charges, including when and how. Indeed, in its decision, the trial court used the exhibit to demonstrate the representations plaintiff made to defendant for purposes of defendant's estoppel defense. Accordingly, the trial court did not violate Evid.R. 408 when it admitted exhibit 1.
Exhibit 10 expressly discusses the terms under which plaintiff would consider refinancing defendant's loan, and arguably are settlement negotiations within the parameters of Evid.R. 408. Even if the exhibit was improperly admitted, plaintiff can demonstrate no prejudice from the exhibit. The trial court neither referenced the document in its decision nor noted the balance that defendant attempted to prove with the document.Booth v. Caldwell (Sept. 22, 1998), Franklin App. No. 98AP-27, unreported (1998 Opinions 4356, 4362).
Finally, like the questioning plaintiff contends was improperly admitted, the notations in exhibit 13 that reflect on-going negotiations were not offered to prove liability or an amount owed but to demonstrate the ongoing negotiations. Because the exhibit was not offered to prove liability or the amount due, the trial court properly admitted the exhibit.
Accordingly, plaintiff's second assignment of error is overruled.
Because plaintiff's first and fourth assignments of error interrelate, they will be addressed together. In its first assignment of error, plaintiff contends that the trial court erroneously determined the amount of damages defendant owed as of May 5, 1997. A civil judgment "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus; see, also,Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
The trial court, in its judgment entry, determined that the principal due and owing as of May 5, 1997 was $278,207.20. To that, the court added $2,463.14 as the six percent late fee assessed on sixteen late payments between May 1, 1991 and April 16, 1994, and another $2,328.94 for the four percent default interest rate increase due to defendant's failure to pay property tax between June 1993 and June 1995. To that total of $282,999.28, the trial court added court costs and interest at ten percent per annum as of June 9, 1998, the date of the court's decision.
Plaintiff first contends the trial court was wrong in finding the principal amount due to be $278,207.20. The balance was obtained from a trial exhibit defendant created. Moreover, the court expressly noted in its decision that defendant's calculations relating to the outstanding balance were more reliable than plaintiff's calculations. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. The beginning balance of $278,207.20 was supported by competent, credible evidence.
Plaintiff next asserts that adding the four percent default interest rate to the payments in that two-year time period from June 1993 to June 1995 affects how much of each payment paid off interest and how much paid off the balance of the note, an adjustment that necessarily would change the amount due as principal. For instance, for the July 1994 payment, defendant paid plaintiff $2,378.14. The interest rate plaintiff charged at that time was 7.375 percent. At that rate, $1,850.40 of the payment was used to pay off interest on the note and the remaining $527.81 reduced the principal due. If the interest rate were increased by the four percent default rate, more of that payment would be used to pay off interest, thus reducing the amount of principal paid off and increasing the amount of principal still owed. The trial court erred in simply awarding plaintiff its contractual four percent default interest rate, as imposing extra interest necessarily would entail less reduction of principal and would adjust any principal balance due and owing as of May 5, 1997.
Plaintiff attempts further, however, to add the four percent default interest rate to the floor rate of nine percent it should have charged defendant under the note, for a thirteen percent interest rate on the payments from June 1993 to June 1995. Beginning in April of 1993, pursuant to plaintiff's notices, defendant paid an interest rate on the note of 7.25 percent. In April of 1994, the rate was increased to 7.375 percent until April 1, 1995, when the rate was increased to 10.5 percent for the remainder of the two-year period in question. Because the rates before April of 1995 were lower than the floor rate of nine percent, plaintiff now attempts to collect the difference in interest rates by adding the four percent interest onto the floor of nine percent interest, despite its notices advising defendant to pay the lower interest rate. The trial court found plaintiff was estopped from collecting the difference between the floor interest rate and the rate that it actually charged defendant.
Plaintiff's fourth assignment of error asserts the trial court improperly applied estoppel to the facts because it in effect improperly reformed the contract between the parties based on defendant's unilateral mistake in assuming the interest rate in plaintiff's notices not only was the correct interest rate, but a concession to keep defendant's business. Absent a mutual mistake, plaintiff contends reformation of the contract was improper.
The trial court did not analyze the change of interest rates as a unilateral mistake; instead, it found that plaintiff was equitably estopped from collecting more than the interest rates it told defendant to pay. Rather than reform the agreement, the trial court simply held plaintiff accountable for the representations it made to defendant.
Equitable estoppel is "the doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he would otherwise have had." Black's Law Dictionary 538 (6 Ed. 1990). "Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon that conduct." London LancashireIndem. Co. v. Fairbanks Steam Shovel Co. (1925), 112 Ohio St. 136,152.
The elements of equitable estoppel require, initially, a factual representation by words, acts or silence, a concealment of a material fact, or at least a position contrary to that now taken. The facts underlying the representation must be known to the party at the time it makes the representation, or circumstances must be such that knowledge is chargeable to it. Next, the representation must be misleading. Thirdly, the representation must induce actual reliance by the second party and such reliance must be in good faith and reasonable under the circumstances. Lastly, the relying party must suffer prejudice or pecuniary disadvantage if the first party is not estopped from asserting an otherwise valid right in contradiction to its earlier representation. First Fed. S. L. Assn. v. Perry's Landing, Inc.
(1983), 11 Ohio App.3d 135, 145; see, also, Whiteco Metrocom, Inc.v. Columbus (1994), 94 Ohio App.3d 185, 191.
Within those parameters, Clay testified at trial that she received notices from plaintiff charging a specified interest rate, and then later alerting her to a change in interest rate payments. In fact, a member of plaintiff's Board of Directors testified that the bank sent notices to Clay advising of the change in rates, explaining that the interest rate was lower than that of the floor rate provided for by the note, but claiming the notices were clerical errors. Those facts disclose that plaintiff made factual representations to defendant, concerning the interest rate it was required to pay. Although plaintiff admits the representations were misleading and incorrect, Clay assumed plaintiff was keeping accurate records, and she relied on the notices to make defendant's monthly payments. Further, if plaintiff were not estopped from asserting the floor interest rate, defendant would suffer a disadvantage in having to pay now as a lump sum that which would have been payable in monthly amounts.
Plaintiff, however, contends Clay could not reasonably rely on its notices because she knew the lower interest rate was below the floor rate set in the note. While Clay admitted she knew she had made payments at an interest rate below the floor set in the note, she did not see it as unusual because she had many other loans on which she paid a similar interest rate; she thought plaintiff was foregoing the higher interest rate to keep defendant as a customer. Accordingly, she relied on the notices to make her monthly payments.
Despite plaintiff's contentions, the trial court found that defendant acted reasonably, given all the surrounding circumstances; that defendant's paying the lower interest rate was not absurd, impossible or irrational. Clay's explanation for defendant's actions allowed the trial court to so conclude and supports that finding. The trial court thus did not err in finding plaintiff was estopped from collecting the floor interest rate plus the four percent default rate. Nonetheless, as noted, the trial court, erred in failing to take into account the extra interest payments that would have to be made when it imposed the default four percent interest rate for payments made between June 1993 and June 1995. Plaintiff's first assignment of error is sustained in part and overruled in part and its fourth assignment of error is overruled.
Plaintiff's third assignment of error contends the trial court erred in not granting it interest under R.C. 1343.03(A) from the time the court found that the money was due and owing May 5, 1997, to the date of the judgment, June 9, 1998. R.C. 1343.03(A) provides:
 [W]hen money becomes due and payable upon any bond, bill, note, or other instrument of writing * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * * unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.
Prejudgment interest "acts as compensation and serves ultimately to make the aggrieved party whole." Royal ElectricConstr. Corp. v. Ohio State University (1995), 73 Ohio St.3d 110,117. Prejudgment interest is to compensate the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court. Id. at paragraph one of the syllabus. R.C. 1343.03(A) states that once a party has established a judgment or settlement on a contract claim, "the creditor is entitled to interest." Thus, once plaintiff received a judgment, the trial court had no discretion but to award prejudgment interest under R.C. 1343.03(A).McDaniel's Constr. Co., Inc. v. Century Surety Co. (May 20, 1999), Franklin App. No. 98AP-882, unreported (1999 Opinions 1330, 1333).
While the right to prejudgment interest in a contract claim is a matter of law, the amount awarded is based on the court's factually determining the accrual date, or when the claim became "due and payable," and the interest rate. Royal Electric at 115; Dwyer Electric, Inc. v. Confederated Builders, Inc. (Oct. 28, 1999), Crawford App. No. 3-98-18, unreported.
Here, while the trial court awarded plaintiff prejudgment interest, it ordered the interest to begin running on June 9, 1998, the date of the court's decision in the matter. The trial court erred in finding interest to accrue from the date of its decision, as defendant failed to make its required payments on the note long before that date. See Star Bank Natl. Assn. v.Cirrocumulus Ltd. (1997), 121 Ohio App.3d 731, 749 (finding prejudgment interest to begin running on promissory note after date of first missed payment). The only disputed issue between the parties was exactly how much money defendant owed plaintiff, and that issue is not determinative in setting a date for prejudgment interest to accrue. Royal, supra. On remand, the trial court must factually determine when plaintiff's money was due and payable, and thus when prejudgment interest should begin to run.
Plaintiff also contends it is entitled to prejudgment interest at thirteen percent as opposed to the ten percent interest rate set forth in the statute. To be entitled to a rate different than the statutory rate of interest, R.C. 1343.03(A) requires plaintiff to prove (1) a written contract between the parties, and (2) a contract provision regarding the rate of interest to be charged with respect to money that becomes due and payable. Hobart Brothers Co. v. Welding Supply Service, Inc.
(1985), 21 Ohio App.3d 142, paragraph one of the syllabus.
The note between the parties clearly is a written contract between the parties. Moreover, the note expressly sets forth an interest rate to be applied if defendant did not perform timely its obligations to pay under the note: four percent above the interest rate at the time the money became due and payable. Thus, that rate should have been applied in awarding plaintiff for prejudgment interest. Plaintiff's third assignment of error is sustained.
Plaintiff's fifth assignment of error contends the trial court erred in not awarding plaintiff attorney fees and collection costs.
The final judgment entry awarded plaintiff court costs but did not award attorney fees. In the absence of statutory authorization or a finding of conduct that amounts to bad faith, a prevailing party may not recover attorney fees. Pegan v.Crawmer (1997), 79 Ohio St.3d 155, 156. No statutory provision authorizes recovery of attorney fees here, and plaintiff has made no showing of bad faith. While the note at issue contains a clause that allows recovery of the "costs of suit," it does not mention attorney fees. Although plaintiff contends that clause expressly provides for the collection of its attorney fees, in Ohio attorney fees generally are not recoverable as costs in a contract action. Walton Commercial Ent. v. Associations (1990),71 Ohio App.3d 109, 115, citing Allen v. Standard Oil Co. (1982),2 Ohio St.3d 122. See, also, Pegan, supra, at 156 (finding that unless specified by statute, the term "costs" does not include attorney fees). The trial court did not err in refusing to award attorney fees to plaintiff. Plaintiff's fifth assignment of error is overruled.
Having sustained in part and overruled in part plaintiff's first assignment of error, having sustained its third assignment of error, and having overruled plaintiff's second, fourth and fifth assignments of error, we affirm in part and reverse in part the judgment of the trial court and remand this matter to the trial court for further proceedings in accordance with this opinion.
Judgment affirmed in part and reversed in part; caseremanded.
BOWMAN and PETREE, JJ., concur.