OPINION
{¶ 1} Pursuant to R.C. 2506.04, appellants, Christopher and Nancy Krumm ("appellants"), appeal from the July 5, 2005 judgment of the Franklin County Court of Common Pleas, in which that court affirmed the decision of appellee, Upper Arlington City Council ("appellee" or "city council") to affirm the decision of the Upper Arlington Board of Zoning and Planning ("BZAP") approving the Major Site Plan, Major Accessory Use and Variance applications submitted by the Wellington School ("Wellington"). With permission from this court, Wellington has intervened as an appellee.
 {¶ 2} The following facts and procedural history are gleaned from the record. Wellington is a private educational establishment that has operated since 1982. Wellington owns an L-shaped lot located in Upper Arlington, Ohio, that measures approximately 19.7 acres. The lot is bounded by Fishinger Road to the south, Reed Road to the west, Grace Lane to the north and The Ohio State University Golf Course to the east. Appellants own one of several single-family homes that are situated on Grace Lane and that abut the Wellington lot.
 {¶ 3} The Wellington lot is currently developed with a two-story main school building, two outbuildings, two parking lots, three unlit athletic fields and five unlit tennis courts. Wellington wishes to expand its facilities in response to growth in its enrollment, which was 600 students as of April 2004. Wellington plans to renovate its facilities and grounds by removing portions of the existing main school building, expanding that building, demolishing the two outbuildings, upgrading the athletic facilities, and relocating the Reed Road access to the school. Plans include retaining 70,000 square feet of the existing facilities and adding approximately 93,000 square feet of new construction, including a three-story theater with a tower, a two-story athletics building with a mezzanine, and lighting for the sports fields and tennis courts.
 {¶ 4} The Upper Arlington Unified Development Ordinance ("UDO") applies to educational institutions and other institutional facilities. Wellington's Major Site Plan calls for a number of features that do not conform to the UDO. Therefore, after Wellington submitted its Major Site Plan to the BZAP on April 9, 2004, it requested ten separate variances. This appeal involves six of those variances.
 {¶ 5} Requested variance number two ("V2") involves increasing the maximum building height from 35 feet to 55 feet to accommodate plans for the theater tower. Requested variance number three ("V3") involves reducing the number of required parking spaces for a school, auditorium and stadium from 359 spaces to 341 spaces. Requested variance number five ("V5") involves an increase in the maximum permitted lighting fixture height from 25 to 70 feet to accommodate athletic field light poles. Requested variance number six ("V6") involves an increase in the maximum permitted development cover from 40 percent to 54 percent. Requested variance number eight ("V8") involves a reduction in the number of required parking lot islands from 26 to 11. Finally, requested variance number nine ("V9") involves a reduction in the minimum permitted interior landscape area for parking lots from eight percent to six percent. Each of these requests sought permission to deviate from standards prescribed for an area that was already zoned to include the use to which Wellington planned to put its lot. Thus, each request sought what is known as an "area" variance, as opposed to a "use" variance.
 {¶ 6} The BZAP approved the Major Site Plan and all requested variances on April 19, 2004. On May 7, 2004, appellants filed an appeal with city council, pursuant to UDO Article 4.10. On June 28, 2004, city council conducted a hearing on appellants' appeal. On July 6, 2004, city council unanimously voted not to reverse the April 19, 2004 decision of the BZAP. Pursuant to R.C.2506.01, appellants appealed city council's decision to the court of common pleas. By judgment entry journalized on July 5, 2005, the trial court affirmed appellee's decision. Appellants timely appealed and advance three assignments of error for our review, as follows:
I. THE TRIAL COURT ERRED IN FAILING TO APPLY EACH OF THE NINE UNIFIED DEVELOPMENT ORDINANCE VARIANCE FACTORS TO EACH VARIANCE REQUESTED.
II. THE TRIAL COURT ERRED BY FAILING TO APPLY PROPERLY THE NINE UNIFIED DEVELOPMENT ORDINANCE FACTORS.
III. THE COMMON PLEAS COURT ERRED BY ALLOWING UPPER ARLINGTON TO CORRECT THE UNIFIED DEVELOPMENT ORDINANCE'S "ERROR IN JUDGMENT" IN APPLYING ONE DEVELOPMENT COVER STANDARD TO BOTH RESIDENTIAL AND INSTITUTIONAL USES BY WAY OF A VARIANCE.
 {¶ 7} We begin by recalling the standards of review applicable to the court of common pleas and to this court. In an appeal pursuant to R.C. Chapter 2506, the court of common pleas may find that the order or decision appealed from is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. "Consistent with its findings, the court [of common pleas] may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court." Ibid.
 {¶ 8} In making its findings, the court of common pleas, "must give due deference to the agency's resolution of evidentiary conflicts. * * * If, at the agency level, a preponderance of reliable, probative and substantial evidence exists, the common pleas court must affirm the agency's decision." Budd Co. v. Mercer (1984), 14 Ohio App.3d 269, 14 OBR 298, 471 N.E.2d 151, at paragraph two of the syllabus. "The [zoning] board's decision * * * is presumed to be valid, and the burden is upon the party contesting the board's determination to prove otherwise." Klein v. Hamilton Co. Bd. of Zoning Appeals
(1998), 128 Ohio App.3d 632, 636, 716 N.E.2d 268, citingConsolidated Mgt., Inc. v. Cleveland (1983), 6 Ohio St.3d 238,240, 6 OBR 307, 452 N.E.2d 1287.
 {¶ 9} The court of common pleas engages in its own weighing of the evidence to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision. Dudukovich v. Housing Authority (1979),58 Ohio St.2d 202, 207, 12 O.O.3d 198, 389 N.E.2d 1113. In doing so, however, the court may not, especially in areas of administrative expertise, "blatantly substitute its judgment for that of the agency." Ibid. See, also, Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265.
 {¶ 10} While the court of common pleas considers the whole record pursuant to R.C. 2506.04, the standard of review to be applied by the court of appeals is more limited in scope. Henleyv. Youngstown Bd. of Zoning Appeals (2000), 90 Ohio St.3d 142,147, 735 N.E.2d 433; Kisil v. Sandusky (1984),12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848. The statute, "grants a more limited power to the court of appeals to review the judgment of the common pleas court only on `questions of law,' which does not include the same extensive power to weigh `the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Kisil, supra, fn. 4. "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals [* * *] might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Henley, supra, at 147, quoting Lorain City School Dist.Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 261, 533 N.E.2d 264.
 {¶ 11} The appellate court is to determine only if the trial court has abused its discretion. Lorain City School Dist. Bd. ofEdn., supra, at 261. "[T]he term `abuse of discretion' connotes more than an error of judgment; it implies a decision without a reasonable basis, one which is clearly wrong." Angelkovski v.Buckeye Potato Chips Co. (1983), 11 Ohio App.3d 159, 161-162, 11 OBR 242, 463 N.E.2d 1280. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See Rohde v. Farmer (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685. However, on questions of law, the court of appeals' review is plenary. Univ. Hosp., Univ. ofCincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835.
 {¶ 12} Our determination, then, is limited to the question whether the court of common pleas made any errors of law assigned on appeal, including whether it abused its discretion in determining that appellee's decision to affirm the BZAP's grant of all six variances was supported by a preponderance of reliable, probative and substantial evidence.
 {¶ 13} A variance authorizes a landowner to establish or maintain a use that is prohibited by zoning regulations.Nunamaker v. Bd. of Zoning Appeals (1982), 2 Ohio St.3d 115,118, 2 OBR 664, 443 N.E.2d 172. "An area variance allows for the development of property in a manner which is generally not permitted by the applicable zoning regulations governing the particular zoned area, provided that the circumstances surrounding the development of the property satisfy certain standards." Workman v. Franklin Cty. Dist. Bd. of Health
(2001), 10th Dist. No. 00AP-905.
 {¶ 14} In Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 12 OBR 26, 465 N.E.2d 848, the Supreme Court of Ohio held, "[t]he standard for granting a variance which relates solely to area requirements should be a lesser standard than that applied to variances which relate to use. An application for an area variance need not establish unnecessary hardship; it is sufficient that the application show practical difficulties." Id. at syllabus.
 {¶ 15} Later, in Duncan v. Village of Middlefield (1986),23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692, certiorari denied,479 U.S. 986, 107 S.Ct. 576, 93 L.Ed.2d 579, the court clarified the "practical difficulties" test annunciated in Kisil. TheDuncan court explained:
[A] property owner encounters "practical difficulties" whenever an area zoning requirement (e.g., frontage, setback, height) unreasonably deprives him of a permitted use of his property. The key to this standard is whether the area zoning requirement, as applied to the property owner in question, is reasonable. The practical difficulties standard differs from the unnecessary hardship standard normally applied in use variance cases, because no single factor controls in a determination of practical difficulties. A property owner is not denied the opportunity to establish practical difficulties, for example, simply because he purchased the property with knowledge of the zoning restrictions.
Id. at 86.
 {¶ 16} The Duncan court went on to prescribe a nonexclusive list of seven factors to be considered and weighed in determining whether a property owner seeking an area variance has encountered practical difficulties in the use of his property. These seven factors are: (1) whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance; (2) whether the variance is substantial; (3) whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer a substantial detriment as a result of the variance; (4) whether the variance would adversely affect the delivery of governmental services (e.g., water, sewer, garbage); (5) whether the property owner purchased the property with knowledge of the zoning restriction; (6) whether the property owner's predicament feasibly can be obviated through some method other than a variance; (7) whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting the variance. Id. at syllabus. No single factor controls in the determination of practical difficulties; the inquiry should focus on the spirit rather than the strict letter of the zoning ordinance so that substantial justice is done. Id. at 86.
 {¶ 17} Section 4.09(D) of the UDO codifies the seven Duncan
factors, adds an additional component to the second Duncan
factor, and adds two additional factors. That section provides:
Standards for Approval: The following factors shall be considered and weighed by BZAP in determining practical difficulty or hardship:
1. Whether special conditions and circumstances exist which are peculiar to the land or structure involved and which are not applicable generally to other lands or structures in the same zoning districts. Examples of such special conditions or circumstances are: exceptional irregularity, narrowness, shallowness, or steepness of the lot, or adjacency to non-conforming and inharmonious uses, structures, or conditions;
2. Whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance;
3. Whether the variance is substantial and is the minimum necessary to make possible the reasonable use of the land or structures;
4. Whether the essential character of the neighborhood would be substantially altered or whether adjoining properties would suffer substantial detriment as a result of the variance;
5. Whether the variance would adversely affect the delivery of governmental services such as water, sewer, and trash pickup;
6. Whether special conditions or circumstances exists as a result of actions of the current or a previous owner;
7. Whether the property owner's predicament feasibly can be resolved through some method other than a variance;
8. Whether the spirit and intent behind the zoning requirement would be observed and substantial justice done by granting a variance; and/or
9. Whether the granting of the variance requested will confer on the applicant any special privilege that is denied by this regulation to other lands, structures, or buildings in the same district.
 {¶ 18} For ease of discussion we will address appellants' second assignment of error first. In support thereof, appellants argue that the trial court misapplied the Duncan and UDO factors to its analysis of appellee's decision to grant V6, which is Wellington's request for a variance from the maximum permitted development cover of 40 percent to a development cover of 54 percent. The trial court concluded that a preponderance of the reliable, probative and substantial evidence supported appellee's affirmance of the BZAP decision to approve V6. Specifically, the court found that the evidence demonstrated that the UDO's development cover standard caused Wellington practical difficulties and unreasonably deprived Wellington of a permitted use of its property.
 {¶ 19} In reaching this conclusion the court discussed theDuncan factors. We will discuss only those factors with respect to which appellants have argued the trial court erred. The firstDuncan factor is whether the property in question will yield a reasonable return or whether there can be any beneficial use of the property without the variance. The trial court recognized that evidence revealed Wellington had operated a school on the property since 1982, that the school had prospered and grown over the years from a modest enterprise to one that currently enrolls 600 students, and that the school anticipated a further increase in enrollment to 750 students. The court concluded that on this evidence alone, without more, it was "unable to conclude that * * * consideration [of this factor] favors one side or the other." (July 5, 2005 Decision and Judgment Entry, at 7.) Appellants argue that the evidence demonstrating Wellington makes beneficial use of the property without V6 was strong enough that the court should have concluded that this factor weighs against granting the variance.
 {¶ 20} It is within the trial court's exclusive province to determine the measure of weight to be accorded to each Duncan
factor in light of the record evidence. This court does not weigh the evidence in this manner; rather, our role is to determine whether the trial court made any errors of law or abused its discretion. In its review of appellee's decision with respect to V6, the trial court made clear that it was aware of the evidence bearing upon the first Duncan factor and, in the exercise of its discretion, determined that this factor was entitled to no weight. We perceive no error of law or abuse of discretion in that determination.
 {¶ 21} The second Duncan factor requires a determination whether the requested variance is substantial. With respect to this factor, the trial court found that V6 is:
considerable, but not so significant so as to diminish the essential character of the locality. It is clear that residential neighborhoods require nearby schools, churches, day care centers and the like. By their very nature, such necessary enterprises require a larger development cover. Accordingly, the evidence preponderates in favor of granting the variance on this consideration.
(Ibid.)
 {¶ 22} Appellants argue that the trial court erroneously considered whether V6 was "so significant so as to diminish the essential character of the locality" and that such an inquiry is irrelevant to whether the requested variance is "substantial." Appellants also argue that the trial court erroneously included within its analysis of this factor the issue whether, "[b]y their very nature, [institutional uses such as schools] require a larger development cover."
 {¶ 23} In Duncan the Supreme Court of Ohio explained what type of evidence would assist with the determination whether the requested variance was "substantial." The court stated, "the evidence presented did not show that other variances had been granted to allow the construction of multi-family dwellings on lots having less than one hundred feet of frontage. In any event the available evidence does not indicate that the Duncans were treated differently than any other applicant seeking a variance from the frontage requirements for multi-family dwellings."Duncan, 23 Ohio St.3d 83, 87.
 {¶ 24} In our view, the trial court in the instant case modeled its determination of substantiality after that of theDuncan court. It attempted to compare the requested variance at issue to other identical or similar development cover variance requests submitted by institutional users for land located within residential districts, in order to determine whether V6 was "substantial." This was not error.
 {¶ 25} In a BZAP supplemental staff report dated April 19, 2004, staff reported that, "[b]ased on data accumulated over the last ten years, the Board has entertained over 200 applications for lot coverage variances in residential districts. Over two-thirds of those variance applications were approved." Specifically, staff reported that the application of Riverside United Methodist Church for a lot coverage variance from 50 percent to 68 percent was approved; the application of St. Andrew Church for a lot coverage variance from 50 percent to 52 percent was approved; the application of Advent Evangelical Lutheran Church for a lot coverage variance from 35 percent to 46.6 percent was approved; and the application of Swim and Racquet Club for a lot coverage variance from 40 percent to 74 percent was approved.
 {¶ 26} Though we do not weigh this evidence independently, we conclude that it was not an abuse of discretion for the trial court to accord this evidence enough weight in its substantiality determination to militate in favor of the requested variance. Further, though its rationale could perhaps have been more artfully or specifically stated, the trial court did not abuse its discretion in analyzing the substantiality of V6; rather, it performed its analysis in accord with the dictates of Duncan.
 {¶ 27} With respect to the third Duncan factor, the trial court found that the essential character of the neighborhood would not be substantially altered and that adjoining properties such as appellants would not suffer a substantial detriment as a result of V6. Appellants do not argue that the trial court failed to take into account certain evidence or that the court applied the wrong standard; they simply quarrel with the fact that the court concluded that this factor weighed in favor of granting V6. Because it is the trial court's exclusive role to weigh the evidence, we will not disturb its conclusions in this regard, absent an abuse of discretion. We fail to perceive such an abuse in the trial court's conclusions respecting the third Duncan
factor.
 {¶ 28} The sixth Duncan factor is "whether the property owner's predicament feasibly can be obviated through some method other than a variance." Duncan at syllabus. With respect to this factor the trial court explained its analysis as follows:
Here, the "predicament" of Wellington is that it desires to grow, modernize and keep pace with its competition. It would appear the only other alternatives to the variance for development cover are to significantly scale back its expansion plans or move its entire operation to a different locale. In the course of communications with its neighbors concerning the variance requests, Wellington did concede on a number of issues and did drop plans for a more robust expansion (e.g. lighting at the auxiliary athletic field and tennis courts, location of bus parking, reduction in size of the athletics building, site grading and other concessions), but significantly decreasing the size of the actual construction project was not seriously entertained, it appears. Thus, a move from the city would be a viable alternative to accomplish Wellington's construction project and planned future growth.
Upon a review of the record, however, it is very clear that Wellington would prefer to stay in Upper Arlington and remain a functioning part of the community. Similarly, it appears the city strongly desires Wellington to remain as one of its well respected institutional residents. It appears virtually all persons want Wellington to remain where it is, although the parties disagree on the scope of the intended expansion. The situation being as described, it is the case that Wellington's "predicament" is unable to be realistically obviated through some method other than a variance.
(July 5, 2005 Decision and Judgment Entry, at 10.)
 {¶ 29} Appellants argue that the court's conclusion that Wellington cannot feasibly obviate its need for expansion without V6 does not square with the court's finding that Wellington could move its operation to a site with less restrictive zoning regulations. Appellants also argue that the trial court was wrong when it took into account Wellington's and Upper Arlington's mutual desire to see that Wellington remain in its present location because such considerations are irrelevant to whether feasible alternatives to a variance exist through which Wellington could obviate its predicament.
 {¶ 30} "Feasible" means "[c]apable of being done, executed, affected or accomplished. Reasonable assurance of success." Black's Law Dictionary (5 Ed. 1979) 549. Our review of the record reveals no evidence demonstrating that it would be feasible for Wellington to relocate at all, or that it could feasibly relocate to a site upon which it could accomplish its expansion plans without running afoul of applicable zoning restrictions. Thus, the trial court's ultimate finding on this factor — that Wellington cannot feasibly obviate its predicament through some method other than a variance — is not contrary to the evidence. We perceive no abuse of discretion in the trial court's consideration of the sixth Duncan factor.
 {¶ 31} As noted earlier, the UDO requires that certain factors be analyzed in addition to the Duncan factors. Appellants argue that the trial court erred as a matter of law by wholly failing to discuss whether V6 was the "minimum [request] necessary to make possible the reasonable use of the land or structures," pursuant to UDO 4.09(D)(3).
 {¶ 32} We observe that the Duncan court itself did not explicitly discuss every factor in its discussion of the variance in that case. This is because in any given case there will not necessarily be evidence relevant to every single factor. We also note that in Cross Country Inns, Inc. v. City of Westerville,
10th Dist. No. 02AP-410, 2003-Ohio-3297, we found no fault with the omission of two of the Duncan factors in the trial court's discussion, noting that the omitted factors "would not change the analysis[.]" Id. at ¶ 37.
 {¶ 33} The Eleventh Appellate District, too, found no fault with a trial court's omission to explicitly relate each of its findings to the Duncan factors and to discuss each and every factor. In Cottrell v. Russell Twp. Bd. of Zoning Appeals (Mar. 26, 1993), 11th Dist. No. 92-G-1698, that court held, "[as long as] the [trial] court clearly had the Duncan factors in mind in reaching its decision[,]" it was not reversible error for the court to exclude an explicit discussion of each factor in its judgment entry. 1993 Ohio App. LEXIS 1737, at *8. See, also,Roberts v. Village of Lordstown (July 10, 1998), 11th Dist. No. 97-T-0149.
 {¶ 34} In the present case, however, there is evidence of record bearing directly upon whether Wellington's requested development cover variance was the minimum request necessary to make possible the reasonable use of the land or structures. Moreover, given that the trial court very explicitly set forth and discussed each of the other UDO factors but omitted to mention this factor, it is not clear that the court had this factor in mind in reaching its decision. Accordingly, we agree with appellants that the trial court erred as a matter of law in failing to take this factor into account in conducting its review respecting V6.
 {¶ 35} Appellants' final argument under their second assignment of error is that the trial court erred in its analysis of UDO 4.09(D)(9). That factor inquires whether "the granting of the variance will confer upon the applicant any special privilege that is denied by this regulation to other lands, structures, or buildings in the same district." With respect to this factor, the trial court stated:
[I]t is routine for the city to grant variances to other owners of land whose use is a permitted institutional use in a residential district. The court observes the city appears to acknowledge that it must and does grant such variances and by doing so, it does not confer any special privilege to those landowners, including Wellington.
(July 5, 2005 Decision and Judgment Entry, at 12.)
 {¶ 36} Appellants argue that the trial court erred as a matter of law because rather than comparing Wellington to all
other landowners "in the same district" the court compared Wellington only to similarly situated landowners in the district, i.e., institutional users. Appellants argue that "[t]he separate but equal regime envisioned by the Court is offensive" because it treats institutional landowners differently than residential landowners who, appellants contend, would not be allowed a variance such as V6. The appellees did not specifically address this issue in their briefs.
 {¶ 37} We agree with appellants that the trial court erred when it compared the privileges that would be afforded to Wellington by approval of V6 only to those afforded to similarly situated users; that is, institutional users. The language of the ordinance requires a comparison of Wellington's land to "other lands, structures, or buildings in the same district." This language makes no distinction between institutional and residential users. When the trial court employed such a distinction in contravention of the plain language of the ordinance, this was an error of law, no matter how practical and sensible an approach it was.
 {¶ 38} The two errors we have identified require reversal because, given our limited standard of review, we are precluded from simply applying the correct legal standards and reweighing the evidence ourselves. Rather, we are constrained to remand this case to the trial court so that it can review and weigh the evidence in light of the applicable factors, apply the correct legal standards, and determine whether city council's decision to affirm the BZAP's grant of V6 was supported by a preponderance of the reliable, probative and substantial evidence.
 {¶ 39} In light of all of the foregoing, we sustain in part and overrule in part appellants' second assignment of error.
 {¶ 40} In support of their first assignment of error, appellants argue that the trial court erred because when it reviewed appellee's decision to affirm the granting of the variances at issue, the court failed to apply to each individual variance all of the factors that must be considered in determining whether an area variance should be granted. They direct our attention to the fact that the court began its analysis by discussing V6 in much detail, but proceeded to provide a truncated discussion of the factors as they affected its analysis of the granting of V5, V2, V3, V8 and V9, often simply referring the reader back to its analysis of the propriety of V6.
 {¶ 41} For example, with respect to V5, the court stated, inter alia, "[t]he analysis reviewed above concerning the development cover would equally apply to the variance allowing the heightened light poles." (July 5, 2005 Decision and Judgment Entry, at 13.) With respect to V2, the only factor that the court specifically mentioned is whether the requested building height variance from 35 to 55 feet is the "minimum necessary," and then concluded, "the variance for the development cover is found to be proper and, accordingly, the necessary variance for the mechanical tower of 55 feet is also found to be proper based upon the stated considerations." (Id. at 14.) The court then inserted a footnote in which it stated, "[a]s appellants acknowledge, many of the variances are akin inasmuch as they `arise from wanting to put such a large building and too many sports facilities on too little land.'"
 {¶ 42} Appellants argue that because of the differing natures of these variances, the trial court should have engaged in a more detailed discussion of each factor as it related separately to each variance at issue. We need not decide whether, as a general proposition, the practice of referring the reader back to a previous detailed discussion of another variance is sufficient to satisfy the requirement that the court analyze all applicable factors, and that it make it clear that it had the applicable factors in mind in reaching its conclusions.
 {¶ 43} This is because even if such a practice is permissible (though certainly not preferable), it is insufficient in a case such as this, in which the court made errors of law in the initial analysis to which it refers. As we stated in our discussion of appellants' second assignment of error, the trial court made errors of law in conducting its analysis of V6; thus, to the extent that the court reapplied the same analysis in its discussion of the other variances at issue, it repeated these errors of law. Accordingly, appellants' first assignment of error is well-taken and sustained.
 {¶ 44} In their third assignment of error appellants argue that when it affirmed BZAP's decision on V6, city council impermissibly used a variance — rather than legislation — to remedy its own error in judgment in enacting the applicable zoning scheme contained in the UDO. The record reveals, however, that appellants never raised this issue at the administrative level. In MacConnell v. Ohio Dept. of Commerce, 10th Dist. No. 04AP-433, 2005-Ohio-1960, we held, "[g]enerally, a party waives the right to appeal an issue that could have been but was not raised in earlier proceedings. This principle has been applied in appeals from administrative agencies." Id. at ¶ 21. (Citations omitted.) See, also, Stores Realty Co. v. City ofCleveland (1975), 41 Ohio St.2d 41, 70 O.O.2d 123,322 N.E.2d 629; Enberg v. Canton Twp. Bd. of Zoning Appeals (1992),78 Ohio App.3d 828, 832, 605 N.E.2d 1365; Sloe v. Russell Twp. Bd.of Zoning Appeals, 11th Dist. No. 2001-G-2369, 2002-Ohio-5150, ¶ 24. Appellants may not raise the error claimed in their third assignment of error because they waived it when they failed to raise it at the administrative level. Accordingly, appellants' third assignment of error is overruled.
 {¶ 45} In summary, appellants' first assignment of error is sustained, their second assignment of error is sustained in part and overruled in part, and their third assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings not inconsistent with this opinion.
Judgment affirmed in part, reversed in part and causeremanded.
Brown and Travis, JJ., concur.